In Re: Appeal of James G. Callas and Jean M. Callas, his wife and Anthony J. Carino and Dolores Carino, his wife, Appellants v. Armstrong County Board of Assessment, Appellee.

Argued May 3, 1982, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and DOYLE, sitting as a panel of three.

*James G. Callas, Callas and Graff,* for appellants.

*Edward J. Steiner, Steiner and Steiner,* for appellee.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., December 7, 1982:

The Armstrong County Common Pleas Court dismissed an appeal by several taxpayers[1] from a 1981 real property tax assessment increase by the Armstrong County Board of Assessment Appeals (Board). We affirm.

---

[1] James G. Callas and his wife, Jean, entered into a joint venture with Anthony J. Carino and his wife, Dolores, for the purpose of purchasing the subject property.

When the taxpayers acquired the subject property, the land was appraised at $300.00 per front-foot, although a previously completed countywide reassessment (1956 Reassessment) established the front-foot valuation for land in that area of $500.00. Prior to the 1981 assessment, the lot's net front-foot valuation, based on $300.00 per front-foot, amounted to $333.06, which resulted in a land appraisal figure of approximately $18,484.00[2] and an approximate assessment of $7,393.00.[3] In 1974 and 1975, the property appraisals were increased to $78,500.00 and $93,504.00, respectively (yielding respective assessments of $31,400.00 and $37,401.00[4]) to reflect the gradual completion of a new two-story block office building. In 1980, the Board directed the chief assessor to recheck all property assessments in the county. The chief assessor discovered that the property's *land* assessment was in-

---

[2] The land was appraised under the following formula:

$300.00   (front-foot rate)
x 1. 1102   (depth factor)

---

$333.06   (net front-foot valuation)
$333.06   (net front-foot valuation)
x   55.5   ft.   (land's frontal dimension)

---

$18,484.83   (land appraisal)

[3] The assessment is determined by applying the appropriate assessed value-to-market value ratio to the land's appraised value:

$18,484.83   (land appraisal)
x   40%   (assessment ratio)

---

$ 7,393.93   (land assessment)

[4] The total appraisal, upon which an assessment is based, is calculated by adding the land appraisal ($18,484.83; *see* footnote 2) to the building appraisal. The building appraisal is calculated by multiplying the building's square footage by a preassigned value for the specific type of structure. Here, $11.00 per square foot is the assigned value for block structures which, when applied to the building's square footage, yields a building appraisal of $75,020.00. The following formula is then employed to arrive at a final assessment:

correct under the 1956 Reassessment requirements. To correct this error, the land appraisal was adjusted to reflect a per front-foot value of $500.00,[5] resulting in an assessment increase of approximately $4,930.00 for the 1981 tax year. The taxpayers contest this increase.

We must resolve two issues: *first,* whether the Board engaged in selective reassessment in violation of both the uniformity requirement of the Pennsylvania Constitution[6] and the equal protection mandates of the Federal Constitution; and *second,* whether the Board had the authority to recheck property assessments and to correct any erroneous assessments. We are mindful of our limited scope of review in these cases: the findings of the court below must be given great force and will not be disturbed unless clear error appears. *Appeal of Chartiers Valley School District,*

|  |  |  |
|---|---|---|
| | $18,484.00 | (land appraisal) |
| + | 75,020.00 | (building appraisal) |
| | $93,504.00 | (total appraisal) |
| x | 40% | (assessment ratio) |
| | $37,401.00 | (*1975* assessment) |

The *1974* assessent, however, was reduced due to the incomplete state of the building's construction:

|  |  |  |
|---|---|---|
| | $60,016.00 | (80% of building appraisal of $75,020.00) |
| + | 18,484.00 | (land appraisal) |
| | $78,500.00 | (total appraisal) |
| x | 40% | (assessment ratio) |
| | $31,400.00 | (*1974* assessment) |

[5] This adjustment resulted in a land appraisal of approximately $30,808.00, a total appraisal of $105,828.00 and a 1981 assessment of $42,330.00.

[6] Pennsylvania Constitution Art. VII §1 provides that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

67 Pa. Commonwealth Ct. 121, 447 A.2d 317, 320 (1982).

The taxpayers first argue that the $500.00 per front-foot valuation was incorporated into the 1974 and 1975 assessments which, in effect, raised the land appraisal in accordance with the 1956 Reassessment. The taxpayers allege that, consequently, the Board could not adjust the 1981 property assessment unless and until *all* the properties in the county had been reassessed. We disagree. The evidence demonstrates, as the trial court concluded, that the 1974 and 1975 assessments reflected an increase in the valuation of the *improvements* on the land rather than of the land itself.[7] Thus, the 1981 assessment did not constitute a reassessment, let alone a selective reassessment, but simply represented a correction of a land valuation error.[8] We now examine whether the Board had the authority to correct an assessment error.

The taxpayers argue that, since there is no provision in the Fourth to Eighth Class County Assessment Law[9] (Assessment Law) expressly permitting for the

---

[7] The taxpayers do not contest the Board's authority to increase the assessed valuation of a property due to the construction of improvements on said property. Section 602.1 of the Fourth to Eighth Class County Assessment Law, Act of May 21, 1943, P.L. 571, *as amended*, added by Section 2 of the Act of January 18, 1952, P.L. (1951) 2138, 72 P.S. §5453.602a provides, in part, that:

*Changes in valuation*

The board may change the assessed valuation on real property . . . (iii) *when improvements are made to real property* . . . . (Emphasis added.)

[8] There is no merit to the taxpayers' contention that the county discriminated against the taxpayers by subjecting them to taxes not imposed on others of the same class. *See Hillsborough v. Cromwell*, 326 U.S. 620 (1945). Thus, we dismiss, without further comment, the taxpayers' claim that they were denied equal protection under the law.

[9] Act of May 21, 1943, P.L. 571, *as amended*, 72 P.S. §5453.101.

correction of assessment errors, any assessment change should be nullified. We recognize that the Assessment Law is not a flawless piece of legislation, and we note its failure to cover certain specific matters. The intent of the Assessment Law, however, is unmistakable: to achieve uniformity of assessments throughout each fourth to eighth class county based on the actual value of the properties assessed. Here, the original assessments had not been based on actual value as required by Section 602(a) of the Assessment Law.[10] The Board directed the chief assessor to recheck valuations throughout the county. As a result of this investigation, the chief assessor corrected the valuation error by applying the $500 per front-foot schedule established in the 1956 Assessment. If the taxing authority were not permitted to correct clerical or mathematical assessment errors, uniformity would not be maintained and such non-uniform assessments would be illegal as violative of both our Constitution[11] and the Assessment Law. Such a result is absurd and would result in some taxpayers bearing an excessive tax burden. Accordingly, we conclude that the Board has the power (and, indeed, the *duty*) to correct erroneous and improper assessments to achieve the mandated uniformity.

Affirmed.

## ORDER

The Armstrong County Common Pleas Court order, No. 1980-1687 (Civil Action—Law) dated February 24, 1981, is hereby affirmed.

---

[10] 72 P.S. §5453.602(a) which mandates that the chief assessor assess, rate and value all subjects and objects of local taxation *"according to the actual value thereof."* (Emphasis added.)

[11] *See* footnote 6.