**Richard E. RADECKE, Appellant,**

v.

**YORK COUNTY BOARD OF ASSESSMENT APPEALS.**

Commonwealth Court of Pennsylvania.

Argued Dec. 3, 2001.

Decided Jan. 25, 2002.

Publication Ordered May 6, 2002.

BEFORE: COLINS, Judge, LEADBETTER, Judge, McCLOSKEY, Senior Judge.

OPINION BY Judge COLINS.

Richard E. Radecke (Taxpayer) appeals from the March 29, 2001 order of the Court of Common Pleas of York County (trial court) that affirmed the Board of Assessment Appeals (Board) decision to correct the assessment of the subject property by calculating the value of improvements which were omitted in the last countywide appraisal. We reverse.

Taxpayer acquired the property on May 23, 1997 for a purchase price of $138,000.

The property was originally assessed at $85,300 and then reassessed in 1996 at $116,680 as part of a countywide reassessment prior to Taxpayer's purchase. After Radecke purchased the property, an appraiser from the York County Assessment Office (Assessment Office) inspected the property and discovered improvements that included an air conditioning system, concrete patio, and an enclosed masonry porch. The appraiser also recorded that there were two full baths instead of one and a recreation room in the basement. The appraiser calculated the value of these improvements, added them to the $116,680 assessed value, and increased the assessed value of the subject property to $138,440. Taxpayer appealed this assessment to the Board of Assessment of Appeals, which denied Taxpayer's request.[1] Taxpayer then appealed to the trial court.

The trial court, citing *Callas v. Armstrong County Board of Assessment,* 70 Pa.Cmwlth. 272, 453 A.2d 25 (1982), held that the Assessment Office is permitted to correct clerical or mathematical errors in order to effectuate uniform taxation. The trial court stated that the failure of the countywide reassessment to pick up the improvements was an error and that the Assessment Office had a duty to correct the assessment. This appeal followed.

The sole issue on appeal is whether Taxpayer's property was "spot reassessed" when the Assessment Office increased the assessment of the subject property by calculating the value of improvements that were omitted in the last countywide appraisal. Our review in a tax assessment appeal is limited to a determination of whether the trial court abused its discretion, committed an error of law, or whether its decision is supported by substantial evidence. *Cedarbrook Realty, Inc.*

---

1. The York County Board of Assessment Appeals reduced the assessment to $137,650.

*v. Cheltenham Township,* 148 Pa.Cmwlth. 310, 611 A.2d 335, *petition for allowance of appeal denied,* 533 Pa. 637, 621 A.2d 582 (1992).

■ With respect to property assessment principles,[2] it is generally acknowledged that once an evaluation has been established for a taxable property, that valuation cannot be changed unless said change is the result of a countywide reassessment. *Althouse v. Monroe County Board of Assessment Appeals,* 159 Pa. Cmwlth. 467, 633 A.2d 1267 (1993), *petition for allowance of appeal denied,* 540 Pa. 623, 657 A.2d 493 (1995). "Spot reassessment," or selective reassessment, is the "reassessment of a property or properties that are not conducted as part of countywide revised reassessment and which creates, sustains or increases disproportionately among the properties' assessed value." 72 P.S. § 5342.1.

Taxpayer argues that his property was improperly reassessed. In support of his position, he stated that no one from the Assessment Office spoke to him or the sellers of the property and that therefore the Assessment Office was in no position to evaluate the cost or age of the improvements. (Hearing transcript, p. 25). Taxpayer directs the Court's attention to *Althouse* for the proposition that a board of assessment may not reassess selected parcels without conducting a countywide reassessment. In *Althouse,* the Assessor's Office increased the assessed values of property within a subdivision because other property within the subdivision was

sold at prices higher than the values originally assigned to taxpayers' lots. The court did not allow the reassessment stating that the purpose of an adjustment should only be to correct clerical or mathematical errors, not to bring an assessment into line with the property's current market value. The error in *Althouse* was failing to anticipate the kind of prices at which the other property in the subdivision would be sold. Applied here, Taxpayer argues that the government agency must first discover the error within its records and then, if necessary conduct an on-site inspection.

In opposition, the Board argues that it was merely correcting a clerical omission that it learned of during the validation of the sale for realty transfer tax purposes and for the accuracy of the data collected for the State Tax Equalization Board. Todd Leik, Chief Assessor and Director of the York County Assessment Office, testified that it was standard procedure to send an assessor out to a property after a sale and that had building permits been received for the subject improvements, the Assessment Office would have made an assessment at that time. (Hearing transcript, pp. 18, 20, 22–23). The Board cites *Callas* which held that taxing authorities were permitted to correct clerical or mathematical errors in order to effectuate uniform taxation. In *Callas,* the correction involved an appraisal of land at $300 per foot even though the countywide reassessment had established the front foot valuation at $500. The Board argues that it is

---

**2.** Section 6.1 of the law known as the Second Class A and Third Class County Assessment Law, Act of June 26, 1931, P.L. 1379, *as amended,* added by Section 2 of the Act of July 19, 1991, 72 P.S. § 5347.1, provides as follows:

> The subordinate assessors may change the assessed valuation on real property when a parcel of land is divided and con-

veyed away in smaller parcels or when improvements are made to real property or existing improvements are removed or are destroyed. The painting of a building or the normal regular repairs to a building aggregating two thousand five hundred dollars ($2,500) or less in value annually shall not be deemed cause for a change in valuation.

obligated to correct clerical errors of assessment records when errors are discovered and notes that the improvements were not recorded because no building permits were ever issued.

*Callas* is distinguishable from the present factual situation because the assessor in *Callas* rechecked property valuations throughout the county before determining that a valuation error had been made. The adjustment in valuation reflected a clerical or mathematical error, and not a perceived error in determining the market value of the property. Moreover, a change in assessment must come when the improvements are made and not at an arbitrary time in the future. While an assessor may change the assessed valuation on real property when improvements are made to real property, the majority of the improvements in question were made prior to Taxpayer's purchase.[3]

Upon examination of the record, we agree with the Taxpayer. While a taxing authority is permitted to correct clerical or mathematical assessment errors in an effort to maintain uniformity, we find that the Board improperly approved an increased assessment on Taxpayer's property thereby subjecting Taxpayer to an impermissible spot reassessment. Here, the essence of the assessment was to bring the property in line with the fair market value of other properties in the neighborhood, not to simply correct mathematical or clerical errors.

Accordingly, the order of the trial court is reversed.

### ORDER

AND NOW, this 25th day of January 2002, the order of the Court of Common Pleas of York County in the above-captioned matter is reversed.

---

**3.** Taxpayer testified that the air conditioner manual stated that its start up date was June 25, 1985. He also testified that the recreational room existed prior to a 1986 and 1996 countywide reassessment and that the "patio" was merely a concrete pad he poured to drain water away from his house. (Hearing transcript, p. 88, 90–93).