**SHENANDOAH MOBILE COMPANY, and Shenandoah Personal Communications Company, Appellants**

v.

**DAUPHIN COUNTY BOARD OF ASSESSMENT APPEALS.**

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 2004.

Decided Feb. 1, 2005.

Reargument Denied April 5, 2005.

---

Carl C. Risch, Carlisle, for appellants.

Carl G. Wass, Harrisburg, for appellee.

BEFORE: COLINS, President Judge, PELLEGRINI, Judge, and COHN JUBELIRER, Judge.

OPINION BY Judge COHN JUBELIRER.

Shenandoah Mobile Company and Shenandoah Personal Communications Company (collectively, Shenandoah) appeal from an order of the Court of Common Pleas of Dauphin County (common pleas) that dismissed Shenandoah's appeal of a decision of the Dauphin County Board of Assessment Appeals (Board). The Board's decision upheld a realty tax assessment of a cellular communications tower and related equipment owned by Shenandoah.

The facts are not in dispute. James Pagliano, III, and Sara Jane Pagliano (collectively, the Paglianos) are the owners of real property in Dauphin County. Shenandoah leased approximately 1,600 square feet of land from the Paglianos upon which it erected a concrete pad, a monopole cellular communications tower and antenna (Tower), a shed or box for equipment, and a perimeter fence. In 2000, Dauphin County performed a countywide reassessment of all real property, but did not deem the Tower, or any cellular towers, proper subjects of assessment for real estate tax purposes. This changed in March, 2001, when, based upon a different interpretation of the law, the Assessment Office decided to identify *all* cellular or wireless towers within Dauphin County and assess the value of those towers and supporting pads as improvements to real estate. Accordingly, the Assessment Office sent out notices of change in assessment to cellular tower owners on December 19, 2002, including one to Shenandoah for the Tower located on the Paglianos' property.

Shenandoah appealed the assessment notice to the Board, which, ultimately, concluded that the Tower and its associated equipment were properly assessed as improvements to real estate and, accordingly, denied Shenandoah's appeal.

Shenandoah timely appealed the Board's decision to common pleas. Prior to the hearing, Shenandoah filed with common pleas a Motion to Strike the Board's Pre-Trial Memorandum on the basis that the Memorandum had cited to and relied upon an unreported Commonwealth Court decision in contravention of this Court's Internal Operating Procedure 414, 210 Pa.Code, § 67.55. The motion also alleged a violation of Pa. R.C.P. No. 1023.1(c)(2) (providing that when, *inter alia,* an attorney signs a document filed with the court, he is certifying that to the best of his knowledge and belief the legal contentions made therein are warranted by existing law). In the unreported decision that was the basis for the Motion to Strike, this Court had held that cellular towers were not equipment, hence, not subject to a realty tax exemption on that basis. Common pleas denied Shenandoah's Motion to Strike at the onset of the hearing.

At the hearing, Shenandoah raised two primary issues: 1) that the assessment of the Tower constituted an unlawful spot reassessment and 2) that the Tower was not "real estate" and, therefore, not subject to taxation as such. Common pleas determined that no impermissible spot zoning had occurred because the Board of Assessment had given the Tower a new tax parcel number and so the assessment was a new assessment, not a reassessment. It also determined that the Tower was real estate, not personalty and, therefore, was a proper subject for a realty tax. Consequently, common pleas dismissed the appeal. Shenandoah now appeals to this Court.

■ On appeal, Shenandoah raises three issues: 1) that common pleas erred in concluding that the assessment at issue was not an impermissible spot reassessment; 2) that common pleas erred in categorizing the Tower as taxable realty, as

opposed to personalty; and, 3) that common pleas erred or abused its discretion by failing to grant Shenandoah's Motion to Strike where the Board, in its Pre–Trial Memorandum, relied upon an unreported Commonwealth Court decision.[1]

Shenandoah argues first that, although the Tower was available for assessment during the 2000 countywide reassessment, it was not assessed at that time, nor within a reasonable time after it was erected. It contends that, by later adding the Tower to the tax rolls, the Board increased the assessment disproportionately when the Tower's assessed value is compared to all other commercial properties within the county that had been assessed in 2001. It, thus, concludes that the Board's action constituted impermissible spot assessment.

■ Spot assessment is statutorily defined in Section 1.1 of what is commonly referred to as the Second Class A and Third Class County Assessment Law (Law)[2] as: "[t]he reassessment of a property or properties that is not conducted as part of a countywide revised reassessment and which creates, sustains or increases disproportionality among properties' assessed values." Section 7.1 of the Law prohibits spot reassessment by a board of assessment, and permits appeal by a property owner who believes that his property had been the subject of spot reassessment. 72 P.S. § 5348.1. Under the Law, the assessment of improvements must take place when the improvements are made and not at some arbitrary time in the future, or a board of assessment will be guilty of spot reassessment. *Radecke v. York County*

*Bd. of Assessment,* 798 A.2d 265 (Pa. Cmwlth.2002). Moreover, once a valuation has been established for a taxable property, that valuation cannot be changed (other than to correct a mathematical or clerical error) unless the change is the result of a countywide assessment. *Id.* at 267. To do so is to engage in impermissible spot assessment. *See id.*

In this case, common pleas concluded that there was no impermissible spot assessment of the Tower because the assessment had been added to the tax rolls by assigning it a new tax parcel number. It relied on Section 7 of the Law, which states in relevant part:

> The board is authorized to make additions and revisions to the assessment roll of persons and property subject to local taxation at any time in the year, so long as the notice provisions of subsection (b) of section 8 are complied with. All additions and revisions shall be a supplement to the assessment roll for levy and collection of taxes for the tax year for which the assessment roll was originally prepared, in addition to being added to the assessment roll for the following calendar or fiscal tax years.

72 P.S. § 5348(f) (footnote omitted).

Shenandoah relies on *Radecke* in asserting that its property has been subjected to spot assessment. In *Radecke,* the improvements at issue were present during the previous countywide reassessment and before the current owners' purchase of the property, but were *overlooked* during the reassessment. The assessment board viewed the oversight as an error in the

---

1. Our standard of review in a tax assessment appeal is limited to a determination of whether the trial court abused its discretion or committed an error of law, and whether its decision is supported by substantial evidence. *Appeal of Marple Springfield Ctr., Inc.,* 530 Pa. 122, 607 A.2d 708 (1992).

2. Act of June 26, 1931, P.L. 1379, *as amended,* 72 P.S. § 5342.1, added by Section 1 of the Act of December 13, 1982, P.L. 1165.

determination of the market value of the property. The assessment board, therefore, increased the assessed value based upon the previously unnoticed improvements. On appeal, we overturned the board's action as an impermissible spot assessment.

■ In contrast to *Radecke*, here, *all* cellular towers within the county, which were all previously *unassessed*, were added to the tax rolls and made subjects of local taxation, because the Board made a legal determination that a *new subject of taxation* existed. In addition, the Tower was not the subject of a spot reassessment since the assessment at issue was an initial assessment, not a reassessment.[3,4] Thus, we hold that no impermissible spot assessment occurred here.

Shenandoah next contends that the Tower is not realty, but personalty, because it is easily removable from the concrete pad. Common pleas disagreed and held that the Tower was realty because it viewed the Tower to be "at one" with the concrete pad to which it was bolted.

Section 201 of the General County Assessment Law[5] enumerates types of property that are subject to real estate assessment and taxation. It provides that:

> The following subjects and property shall, as hereinafter provided, be valued and assessed, and subject to taxation for all county, city, borough, town, township, school and poor purposes at the annual rate:
>
> (a) All real estate, to wit: [There then follows a lengthy list of specific items including houses, buildings, trailer parks, parking lots, mills and many other objects. Cellular towers are not mentioned.] ... and all other real estate not exempt by law from taxation ...
>
>     ...
>
> (c) *All other things and persons now taxable by the laws of this Commonwealth for county, city and school purposes.*

(Emphasis added.)

■ Because cellular towers are not specifically listed as subject to taxation, we turn to our Court's analysis in *Appeal of Sheetz, Inc.*, 657 A.2d 1011, 1012–1013 (Pa. Cmwlth.1995), *petition for allowance of appeal denied*, 542 Pa. 653, 666 A.2d 1060 (1995), to determine whether cellular towers constitute "real estate" under the General County Assessment Law. In *Sheetz*, we had to determine whether a gasoline pump canopy was a fixture, and thus taxable as realty, or was personalty, and thus not subject to realty tax. The *Sheetz* Court began by setting out the broad cate-

---

**3.** Shenandoah also asserts that, although the Board and common pleas rely on Section 5348(f) of the Law, the fact remains that if a board of assessment is permitted to arbitrarily add property to the tax rolls by assigning "new" and separate tax parcel numbers, then the legislative prohibition against spot reassessment would be meaningless. We might agree if the record showed that the Board improperly deemed reassessments to be new assessments; however, the record does not so indicate here.

**4.** Shenandoah also relies on *Althouse v. County of Monroe*, 159 Pa.Cmwlth. 467, 633 A.2d

1267 (1993), *petition for allowance of appeal denied*, 540 Pa. 623, 657 A.2d 493 (1995), where an assessment board attempted to reassess select residential properties because surrounding properties had gone up in value after the countywide reassessment. The board in *Althouse* argued, and this Court rejected, the notion that its reassessments were done to correct mathematical or clerical errors. Here, the Board did not reassess cell towers much less reassess only certain cell towers.

**5.** Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. § 5020–201.

gories of chattels in a quote from our Supreme Court, in *Clayton v. Lienhard,* 312 Pa. 433, 167 A. 321 (1933):

> Chattels used in connection with real estate are of three classes: First, those which are manifestly furniture, as distinguished from improvements and not peculiarly fitted to the property with which they are used; these always remain personalty.... Second, those which are so annexed to the property that they cannot be removed without material injury to the real estate or to themselves; these are realty, even in the face of an expressed intention that they should be considered personalty.... *Third, those which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, depending upon the intention of the parties at the time of the annexation;* in this class fall such chattels as boilers and machinery affixed for the use of an owner or tenant but readily removable....

657 A.2d at 1012–1013 (citations omitted)(emphasis added). Next, the *Sheetz* opinion sets out the test for determining whether a chattel that falls within the third class becomes so affixed that it becomes part of the realty:

> A fixture is an article in the nature of personal property which has been so annexed to the realty that it is regarded as part and parcel of the land. Black's Law Dictionary 575 (5th Ed.1979). The considerations to be made in determining whether or not a chattel becomes a fixture include (1) the manner in which it is physically attached or installed, (2) the extent to which it is essential to the permanent use of the building or other improvement, and (3) the intention of the parties who attached or installed it. *Id.* at 1013 (emphasis omitted) (quoting *Gore v. Bethlehem Area School District,* 113 Pa.Cmwlth. 394, 537 A.2d 913, 915 (1988)).

We then applied this test to the Sheetz gasoline pump canopies. The first consideration is the manner in which the canopies are installed. The canopies are large metal structures with poured concrete foundations, one was 24–by–84 feet and the other was 24–by–44 feet. *Sheetz,* 657 A.2d at 1012. The canopies are fabricated off premises and, although weighing 20 and 35 tons each, have been relocated from one store to another. They are mounted on pillars attached to the ground by bolts sunk in poured concrete, which are also covered with concrete. The Court found that "while a canopy can be removed with little damage to the real property requiring only removal of the concrete and bolts, to 'unaffix' the canopy, significant effort is required to disassemble it into its component parts yet leaving the poured concrete foundation in place." *Id.* at 1013. Based on this, the Court found that the canopies were "substantially affixed to the land." *Id.* at 1014.

The second consideration is whether the canopy is essential to the use of the improvement. We noted in *Sheetz* that there was record evidence from the company's chief financial officer that canopies are a usual part of gasoline stations and protect customers from the elements. They also contribute favorably to the overall perception of the station and provide for better lighting for both the sales area and the parking lot. The witness also stated that locations with canopies have an increased volume of business. Finally, we observed that "[t]he essential nature of canopies is confirmed by the number of land use cases where owners sought variances to allow

canopies because they are necessary for the operation of modern gasoline stations with self-service pumps." *Id.* at 1014.

The third consideration is the intention of the parties when they attach the canopies. We noted in *Sheetz* that nothing in the record indicated that the canopies were an item that anyone intended to remove as long as the property continued to be used as a convenience store that was also selling gasoline. *Id.* Based upon this analysis we concluded that the canopy was a part of the realty and was therefore taxable as real estate.

■ We now apply this test to the Tower, beginning with the first consideration, the manner of attachment. Shenandoah asserts that the removal of the Tower in the instant case will cause no damage to the real property because the Tower is affixed to the concrete pad by bolts alone and does not touch the pad, which merely serves as a counterweight for the Tower. However, in categorizing the canopy in *Sheetz* as realty, rather than personalty, we observed that the degree of attachment necessary to evidence permanence is not high, and can include the bolting of a fixture to the realty. *Sheetz*, 657 A.2d at 1014 n. 7 ("It is easiest to satisfy the ... annexation factor if the item is cemented, *bolted*, or welded into place, so the realty and the fixture are united.") (Quoting, with emphasis added, 5 *Powell on Real Property*, § 652[2] p. 57–32). Further, we stated that:

> The permanence required is not equated with perpetuity. Just because they have been and can be moved does not mean the intention was not to make them permanent. It is sufficient if the item is intended to remain where affixed until worn out, until the purpose to which the realty is devoted is accomplished or until

the item is superseded by another item more suitable for the purpose.

*Id.*, 657 A.2d at 1014.

Shenandoah contends, however, that the Tower is easily removable from the pad merely by unscrewing the bolts. Yet, as we observed in *Sheetz*, "[m]odern construction methods and types of structures allow material that stays for years on a piece of property to be moved with little damage to the property. Acoustic ceiling panels 'affixed' by gravity and removable with no damage to the property are nonetheless taxable as real estate as are door handles and kitchen faucets when attached to a structure." *Id.* at 1013–14. In the case of the Tower, the four bolts are each eight feet long and are imbedded deep in the concrete base, which is an in-ground foundation. The area is fenced in, electrical connections are hooked up and the area is landscaped. The Tower, which is in three sections, supports cables and antennae and can be removed only by using a crane. (N.T. at 19–23.) It requires about a day and a crew of workers to dismantle it. (N.T. at 21, 27.) Further, towers are moved only when business warrants it (N.T. at 20, 53), for example, when they become obsolete or population shifts. Based on this evidence, we conclude that the Tower, like the canopy in *Sheetz*, possesses the requisite degree of "attachment."

The second consideration in *Sheetz* is the extent to which the chattel is essential to the permanent use of the building or other improvement. Shenandoah argues that the Tower is not essential for the use of any buildings or other improvements upon the property. It argues that the Tower serves no purpose to the buildings or other improvements on the land, and is not customary and usual to a house, barn, garage, or even a concrete pad. However, the concrete pad was installed solely to

support the Tower and without the Tower the concrete pad serves no function. Further, Shenandoah's' Director of Internal Controls stated that there is nothing holding a monopole down other than the four bolts stuck into the cement. (N.T. 18). Thus, the trial court was correct in holding that the two components are really one piece of realty and, because one cannot function without the other, the Tower is essential to the permanent use of the improvement.

■ The third and last consideration in *Sheetz* is described as the intention of the parties who attached or installed the chattel. Shenandoah contends that the intention of the parties is that the Tower be removed on or before the termination of the Agreement. The Agreement, entered into by Shenandoah's predecessor in title, provides for Shenandoah's abandonment of the pad at the end of the lease; however, the Tower, which Shenandoah considers part of its inventory of equipment, will be removed from the property. (R.R. at 93a.) Nonetheless, for property that falls in the third class, we do not focus only on the parties' subjective intent, but rather, "the question of whether property is realty or personalty is one of law to be based on the facts regarding a particular property owners' manifest *conduct.*" *Sheetz,* 657 A.2d at 1014 (emphasis added). As our Supreme Court has stated:

> Contract cannot make a chattel realty, nor realty a chattel.... [A]ll fixtures whilst attached to the freehold are, for the time being, a part of the realty. No contract can change their nature. It is true there may be a contract allowing some one to take them off.... But a

contract that something may be converted into personalty at a future day, does not make it so from the time of the contract.

*Clayton v. Lienhard,* 312 Pa. 433, 439, 167 A. 321, 323 (1933).[6] Thus, we also look at intent as manifested by the parties conduct. Here, the Tower was bolted to the pad, and would be moved only when business warrants it. The Lease Agreement, which is for five years, provides for four automatic five-year lease renewals, and the lease and automatic renewals (a total of twenty-five years) can be terminated at will *only* by Shenandoah. (N.T. at 39–40; PCS Site Agreement, Ex. A to Factual Stipulations.) Therefore, we conclude that the trial court did not err in disregarding the "intent" stated in the Agreement. Based upon this three-part analysis, we conclude that the Tower is a part of the realty and is therefore taxable as real estate.

Shenandoah next asserts that the Pennsylvania Department of Revenue has concluded in a letter ruling that wireless telecommunication towers attached to concrete pads by bolts constitute "tangible personal property" and are not "permanently affixed to real estate." However, this Court rejected that same argument in *Sheetz,* when we stated:

> As to the imposition of sales and use tax, there is nothing inconsistent in paying a sales and use tax on the sale of the personalty, and then, when installed and a fixture, being taxed as real estate. If you buy a kitchen faucet, you pay a sales tax, but once you install it, it is incorpo-

---

**6.** Shenandoah also asserts that, even if the Tower is held not to be personalty, it is at a minimum a trade fixture—devoted to a trade purpose—installed by a lessee and, under Pennsylvania law, lessee's personal property. *See Berry v. Heinel Motors, Inc.,* 162 Pa.Super.

52, 56 A.2d 374 (1948). That case concerns a trespass action arising from a commercial landlord/tenant dispute and alleged conversion of some undefined trade property. It had nothing to do with tax law and, therefore, is not apropos here.

rated into the real estate and is taxable as such.

657 A.2d at 1013 n. 6.

Shenandoah's final argument is that common pleas erred in declining to strike the Board's Pre–Trial Memorandum, which contained a citation to an unreported opinion of this Court. Section 414 of this Court's Internal Operating Procedures states:

> Unreported opinions of the court shall not be relied upon or cited by a Court or party in any other action or proceeding, except that such a memorandum decision may be relied upon or cited when it is relevant under the doctrine of law of the case, res judicata, or collateral estoppel. When an unreported memorandum opinion is relied upon pursuant to this rule, a copy of the memorandum must be attached to the brief. A single-judge opinion, even if reported, shall be cited only for its persuasive value, not as a binding precedent. This rule shall be effective retroactively, so as to apply to opinions filed before the effective date of this section, as well as to opinions filed in the future.

210 Pa.Code § 67.54

■ This Court has held that references to unpublished, unreported decisions can be stricken. *Meier v. Maleski*, 167 Pa. Cmwlth. 458, 648 A.2d 595, 600 (1994). In *Meier*, this Court struck all references to an unpublished opinion in a Petition for Review. We did not, however, strike the entire petition, thus indicating that the Court has discretion in such an instance. Common pleas, in declining to grant the motion to strike, indicated in its opinion that it did not consider the case as binding precedent.[7] Further, the memorandum opinion contained other appropriate legal argument and the issue decided was not the same one presented in the case before us now. Given these factors, we conclude that common pleas did not abuse its discretion.[8] Similarly, Shenandoah's contention that the Board's citation to and reliance upon the case violated Pa. R.C.P. No. 1023.1(c)(2) as an unwarranted legal contention or defense, while, perhaps, technically correct, does not require reversal of the order. Were we to hold otherwise, a party whose brief contained an improper citation could lose the case even though the substantive law is squarely in the party's favor.[9] Such a result is untenable.

Because we conclude that the Board did not engage in spot assessment and that the Tower is not personalty, we affirm the order of common pleas.

---

**7.** It was correct both because the case was unreported and because it dealt with the equipment and machinery tax exclusion which is not at issue here. When the unreported opinion was issued by this Court, the Assessment Office realized that the courts may be receptive to a legal argument that a cellular tower and its components were not "machinery and equipment," but were "all other real estate not exempt by law from taxation" under the General County Assessment Law, 72 P.S. § 5020–201(a). This caused the Board to change its legal position, appraise and add to the tax rolls all cellular sites within the county.

**8.** In *Appeal of Lynch Community Homes, Inc.*, 105 Pa.Cmwlth. 29, 522 A.2d 716, 719 n. 4 (1987), we defined an abuse of discretion as, "not merely an error of judgment, but if in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence of record, discretion is abused."

**9.** Shenandoah does not seek, as an alternative, a remand for reconsideration of its case without consideration of the unreported decision. In any event, however, we believe to do that on these facts would be a waste of judicial resources.

## ORDER

NOW, February 1, 2005, the order of the Court of Common Pleas of Dauphin County in the above-captioned matter is hereby AFFIRMED.