### Sher v. Berks County Board of Assessment Appeals

*Joseph A. O'Keefe,* for appellants.
*Edwin L. Stock,* for appellee.

LASH, *J.,* September 1, 2006—The appellants, Robert B. Sher and Victoria Sher (Taxpayers), have appealed the decision of the Board of Assessment Appeals of Berks County directing an increase in the preferential use assessment of real property owned by Taxpayers. Taxpayers are enrolled in Berks County's preferential use assessment program under the Pennsylvania Farmland and Forest Land Assessment Act of 1974 (Act 319), commonly known as the Clean and Green Act, 72 P.S. §5490.1, et seq. The court held a non-jury trial on August 28, 2006.

The court enters the following findings of fact:

## I. FINDINGS OF FACT

(1) The appellants, Robert B. Sher and Victoria Sher (Taxpayers), are adult individuals who reside at 325 Mine Lane, Oley, Berks County, Pennsylvania 19547.

(2) The Berks County Board of Assessment Appeals is located at the Berks County Services Center, Third

Floor, 633 Court Street, Reading, Berks County, Pennsylvania 19601.

(3) Taxpayers are the record owners of a property located at 325 Mine Lane, Oley, Berks County, Pennsylvania (property), consisting of approximately 13.03 acres of land, improved with a two-story dwelling and two garages.

(4) The property is located in the Oley Valley School District.

(5) The property is identified by the Berks County Assessment Office by pin number 67-5348-00-63-3065.

(6) On or about May 28, 1996, Taxpayers filed an application to enroll the property in the Acts program beginning tax year 1997. The application listed a total of 13 acres, with 10 acres being tillable agricultural use, two acres being forest, and one acre being reserved for a home site.

(7) In 1997, the property was placed in the Clean and Green program, and the property was assessed at $113,700, Clean and Green value.

(8) By notice mailed on October 31, 2005, the board notified Taxpayers that, as a result of Act 156 of 1999 and Act 235 of 2004, a change in the assessed value of the property had been made. The notice set forth the following assessed values:

2006 market—$197,700;

2005 Clean and Green—$ 113,700; and

2006 Clean and Green—$158,500.

(9) Taxpayers appealed this assessment to the board and a hearing was held on December 19, 2005.

(10) During the course of this appeal, the County Mapping Office determined, contrary to the Taxpayers' application for Clean and Green, that 7.56 acres of the total 13.03 total acres was forest. Subsequent to the board's hearing in December 2005, the Mapping Office created a new delineation setting forth that 7.23 acres, or 55 percent, of the total acreage was categorized as forest reserve.

(11) Following the hearing, on December 30, 2005, the board issued a final notice to Taxpayers setting forth that the Clean and Green assessment for the property was $158,500, and the market value was $197,700.

(12) On January 27, 2006, Taxpayers appealed the board's determination to the Court of Common Pleas of Berks County.

## II. DISCUSSION

The increase in Taxpayers' preferential use assessment represents a change in valuation of the farmstead acreage from preferential use assessment to fair market value. This reassessment represents the board's determination that it can apply the provisions of Act 235 of 2004, which amended section 5490.4b of the Clean and Green Act,[1] effective February 7, 2005, to Taxpayers' property.

---

1. 72 P.S. §5490.4b.

Section 5490.4b, as amended by Act 235, states:

"(a) For each application for preferential assessment, the county assessor shall establish a total use value for land in agricultural use, including farmstead land, and for land in agricultural reserve by considering available evidence of the capability of the land for its particular use utilizing the USDA-NRCS Agricultural Land Capability Classification system and other information available from USDA-ERS, the Pennsylvania State University and the Pennsylvania Agricultural Statistics Service. Contributory value of farm buildings shall be used.

"(b) For each application for preferential assessment, the county assessor shall establish a total use value for land in forest reserve by considering available evidence of capability of the land for its particular use. Contributory value of farm buildings shall be used.

"(c) A county assessor may establish use values which are less than the values provided by the department under section 4.1,[2] but lesser values shall be applied uniformly to all land in the county eligible for preferential assessment.

"(d) For purposes of this section:

"(1) Farmstead land located within an area enrolled as agricultural use shall be assessed at agricultural use value.

"(2) Farmstead land located within an area enrolled as agricultural reserve or forest reserve shall be assessed at agricultural use value if either:

---

2. 72 P.S. §5490.4a.

"(i) a majority of land in the application for preferential assessment is enrolled as agricultural use land; or

"(ii) in the circumstance that noncontiguous tracts of land are enrolled under one application, a majority of land on the tract where the farmstead land is located is enrolled as agricultural use land." 1974, Dec. 19, P.L. 973, no. 319 §4.2, added 1998, Dec. 21, P.L. 1225, no. 156, §4, imd. effective. Amended 2004, Dec. 8, P.L. 1785, no. 235, §3, effective Feb. 7, 2005.

Previous to the passage of Act 235, agricultural use, agricultural reserve and forest reserve, including farmstead land, were given preferential use assessment. Under Act 235, the farmstead acreage would still receive preferential use if it was located within an area enrolled as agricultural use. However, if the farmstead is located within an area enrolled as either agricultural reserve or forest reserve, the farmstead is to be assessed at fair market value unless, inter alia, the majority of the land in the application for preferential assessment is enrolled as agricultural use land. The board found that approximately 55 percent of the property was forest reserve, and therefore, the farmstead should be assessed at fair market value.

Taxpayers oppose the reassessment, claiming that the action taken constitutes a spot assessment. As there was no change in use, change of ownership or split off, the board exceeded its authority.[3] We agree.

---

3. Taxpayers also claim that even if Act 235 applies, the majority of the land, according to the original application, is enrolled as agricultural use and, therefore, the farmstead can be assessed at agricultural use value. Because we reverse the board on other grounds, this issue is not addressed.

Generally speaking, once a valuation has been established for a taxable property, the valuation cannot be changed unless the change is a result of a countywide reassessment. Spot reassessment, or selective reassessment, is the reassessment of a property or properties that are not conducted as part of a countywide revised reassessment and which creates, sustains or increases disproportionately among the properties assessed value. 72 P.S. §5342.1. *Radecke v. York County Board of Assessment,* 798 A.2d 265, 267 (Pa. Commw. 2002).

The assessment law does provide authority for changing assessments in certain circumstances. Section 5347.1 of the County Assessment Law,[4] dealing with counties of the second class A and third class, provides that assessors may change the assessed valuation on real property when a parcel of land is divided and conveyed away in smaller parcels or when improvements are made to real property, or existing improvements are removed from real property, or are destroyed. There is no provision, however, permitting a change in the assessment due to a change in the law.

We also cannot find any authority for this action under the Clean and Green Act. The Clean and Green Act does permit a change in preferential use assessment, as well as imposition of rollback taxes, under certain circumstances, which may include a change in use of the land, change in ownership of a portion of the land, or a division or conveyance of the land. The Clean and Green

---

4. 72 P.S. §5347.1.

Act, however, does not address the ramifications of a change in the law.

Under section 5490.4b(a), the rights and duties of the landowner are set at the time of the filing of the application. This includes the preferential use rate. Just as in the case of a fair market value assessment, once the preferential use assessment is set, the board cannot increase the preferential assessment, unless one of the triggering events occurs. A change in the law is not a triggering event unless, of course, the legislature specifically intends it to be so.

We also note that section 5490.4(f)(2) of the Clean and Green Act, dealing with amendments to the initial application, states that: Preferential assessment on land which continues to meet the provisions of section 3 shall not lapse and shall continue at the same rate previously established under section 4.2 (5490.4b). This provision appears to state that if a landowner files an amendment to his application, the preferential use established at the time of the initial application shall continue, so long as the land continues to meet the use requirements also established at the time of the application. Thus, it appears the legislature intended to ensure that the filing of an amended application would not, in and of itself, be a basis for penalizing a landowner. The governing rate is the rate at the time of the filing of the original application, not the amendment. There is no exception provided if the law has been changed. Accordingly, it would follow that a landowner who does not seek an amendment and continues to comply with all terms and conditions of the Clean and Green Act should also be able to rely on the

continuation of the preferential assessment rate set at time of application, even when there is a change in the law.

We also hold that Act 235 cannot be applied retroactively. The general law regarding retroactive application of a statute is set forth in the case of *Moyer v. Berks County Board of Assessment Appeals,* 803 A.2d 833, 842 (Pa. Commw. 2002), *appeal denied,* 571 Pa. 711, 812 A.2d 1232 (2002), where the Commonwealth Court states:

"It is well established that a statute must be construed prospectively unless the legislature intends that it operate retrospectively and expresses this intent so clearly as to preclude any question. *R & P Services Inc. v. Commonwealth of Pennsylvania, Department of Revenue,* 116 Pa. Commw. 230, 541 A.2d 432 (1988); section 1926 of the Statutory Construction Act of 1972, 1 Pa.C.S. §1926.[5] This rule of construction has also been applied to the regulations of administrative agencies. *Jenkins v. Unemployment Compensation Board of Review,* 162 Pa. Super. 49, 56 A.2d 686 (1948). On the other hand, procedural statutes and regulations, as opposed to substantive[6] ones, may be applied retroactively. The demarcation between substantive and procedural laws is, however, at times

---

5. It states as follows:

"No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S. §1926.

6. Substantive laws are those that establish rights that can be protected and will affect the outcome of litigation; procedural laws are those that address the methods by which substantive rights are enforced. *Morabito's Auto Sales v. PennDOT,* 552 Pa. 291, 715 A.2d 384 (1998).

difficult to discern. *Laudenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 436 A.2d 147 (1981), *appeal dismissed,* 456 U.S. 940, 102 S.Ct. 2002, 72 L.Ed.2d 462 (1982)." (footnotes omitted)

There is no language in the text of Act 235 permitting the Act to be applied retroactively. The provisions are substantive, affecting the rights of the taxpayer to reduction in payment of property tax in exchange for his agreement to restrict the use of the land. Act 235 is prospective, and cannot be applied in determining the assessment of Taxpayers' property under these facts and circumstances.

We enter the following order:

## ORDER

And now, September 1, 2006, upon consideration of the real estate tax assessment appeal of appellants, Robert B. Sher and Victoria Sher, response thereto, and after trial held, the decision of the Berks County Board of Assessment Appeals dated December 30, 2005, preferentially assessing real property owned by appellants and located at 325 Mine Lane, Oley, Berks County, Pennsylvania 19547, pin no. 67-5348-00-63-3065, at $158,500 is reversed. The previous preferential assessment of $113,700 shall be reinstated.