IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cole Fasnacht and                          :
Courtney Fasnacht, his wife,              : No. 356 C.D. 2016
                                           : Submitted:  October 21, 2016
                    Appellants            :
                                           :
             v.                            :
                                           :
Board of Property Assessment              :
Appeals of Schuylkill County              :
                                           :
             v.                            :
                                           :
Schuylkill County, South Manheim          :
Township, and Schuylkill Haven            :
Area School District                      :

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge[1]
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge[2]

OPINION
BY JUDGE WOJCIK                            FILED:  March 9, 2017


          Cole Fasnacht and Courtney Fasnacht, his wife, (together, Taxpayers) appeal from the February 9, 2016 order of the Court of Common Pleas of Schuylkill County (trial court) that denied and dismissed their tax assessment appeal.  We affirm.

          Taxpayers purchased property (Property) at 348 Bernie Drive in Schuylkill County, Tax Identification No. 28-2-28.1, on November 6, 2013, for

_____

          [1] This Opinion was assigned to the authoring Judge on December 16, 2016.

          [2] This decision was reached before the conclusion of Senior Judge Friedman's service with this Court

$175,000. On June 5, 2015, the County Tax Assessment Office (County) notified Taxpayers of a change in the Property's assessment from $33,540 to $66,120. Taxpayers appealed the assessment change to the County Board of Assessment Appeals, which denied their request to change the assessment. Thereafter, Taxpayers appealed to the trial court, contending that the change of assessed value was an impermissible spot reassessment.[3]

At a hearing before the trial court on December 9, 2015, the County introduced its assessment card for the Property, which showed a fair market value of $132,244 and an assessed value of $66,120. The County also introduced the testimony of field appraiser Debra Detweiler, a Certified Pennsylvania Evaluator licensed to perform field appraisals. Detweiler testified that she has been a field appraiser for the County since 2003 and is assigned to thirteen or fourteen different municipalities in the County. She explained that, as a field appraiser, she receives building permits from various municipalities, and she is responsible to check on properties and adjust assessments for those properties with new construction or improvements. She added that the law does address the number of visits an assessor must make each year but said that, as a general rule, County field appraisers go to their designated areas twice a year; they check on permits that have been issued and drive the districts looking for other construction. Reproduced Record (R.R.) at 4a-6a, 11a, 22a, 37a-38a.

---

[3] Section 8843 of the Consolidated County Assessment Law, 53 Pa.C.S. §8843, prohibits the county assessment office from engaging in the practice of spot reassessment. "Spot reassessment" means the reassessment of a property that is not conducted as part of countywide revised reassessment and that creates, sustains, or increases disproportionality among properties' assessed values. *Radecke v. York County Board of Assessment Appeals*, 798 A.2d 265, 267 (Pa. Cmwlth. 2002).

Detweiler testified that she received a building permit for a patio enclosure issued for the Property on November 23, 2010. She stated that she visited the Property on January 5, 2011, and observed that construction had begun. She said that she visited the Property several times after January 2011, including occasions after the date of Taxpayers' purchase of the Property in November 2013. She stated that while she monitored the progress of work on the patio enclosure, she also observed construction that was not included on the permit. More specifically, Detweiler testified that the changes she observed at the Property included an addition to the rear of the home, increasing the living area of the second floor; a two-story attached garage with living area above that as well; and an above-ground pool or hot tub, which held no value for assessment purposes but was also something new. She also introduced photographs taken in August 1995 and September 2015 reflecting those changes. Detweiler acknowledged that she did not document every visit to the Property, but she said that her file notes reflect that the two-car garage with living area above was still under construction on May 9, 2014. R.R. at 9a-16a, 24a-26a.

On April 20, 2015, Detweiler determined that the construction was complete and issued a Change of Assessment notice. She explained that it is the practice of the County that a revised assessment based on an improvement is not done until the construction is finished. She said that on her earlier visits, she had observed lumber stacked up outside and/or people working on the home, whereas on that date she saw no activity and noticed that there were curtains in the living area above the garage. Detweiler testified that, relying on her expertise and experience, she concluded that the improvements on the Property were completed. She stated that the Property's assessment was revised based on information obtained in the field and entered into "our governed system downstairs," adding that the calculation of the new

3

assessed value from $33,540 to $66,120 was not a new appraisal, but was "predetermined in our system from the 1995 reassessment." R.R. at 16a-19a.

On cross-examination, Detweiler acknowledged that she could not be certain of the exact date that the work was finished. She testified that she never saw contractors at the Property because the former owners were doing the construction themselves beginning in January 2011. She also said that she was not aware that the ownership of the Property had changed, and she was using a working file that showed Vernon and Marianne Blankenhorn, and not Taxpayers, as the owners. She stated that on April 20, 2015, she noticed that the entire outside of the Property had been cleaned up and there was no sign of ongoing construction.

Finally, Detweiler testified that, other than the 30-month exemption for interim assessments for new construction, Section 8813 of the Consolidated County Assessment Law (Law), 53 Pa.C.S. §8813, the Law does not specify time limits for revising assessments based on construction. However, Detweiler repeated that the County's practice is to change an assessment when the County determines that construction is completed and that in this case, she initiated the change as soon as she made that determination. R.R. at 33a, 38a.

Cole Fasnacht testified that the previous owners of the Property obtained the building permit and performed the renovations and that he did not perform any construction on the Property after his purchase in November 2013. Asked about the materials Detweiler observed in 2014, Fasnacht said that he had no idea what she saw, but that he was landscaping. He said that he also re-stoned the driveway, but he was told he did not need a permit for that. He stated that no other changes were made to the Property subsequent to Taxpayers' purchase, including installation of the hot tub. R.R. at 46a-54a.

4

The trial court noted that under Section 8817(a) of the Law, 53 Pa.C.S. §8817(a), changes to assessments resulting from improvements or new construction shall not be construed to be illegal spot assessments. The trial court further observed that there is no requirement for a property owner to inform the assessment office that improvements to the property are complete. The trial court determined that Detweiler's credible testimony established that: she was aware of ongoing construction at the Property; she monitored the construction on numerous occasions; and she initiated a change to the assessment at the time she reasonably determined, based on her experience and expertise as a field appraiser, that construction was finally completed.[4] In light of these facts, the trial court concluded that the reassessment was not made at an arbitrary time in the future and was not an impermissible spot reassessment. Accordingly, the trial court denied Taxpayers' appeal.

On appeal to this Court,[5] Taxpayers argue that the Property's reassessment due to improvements made before they purchased the Property constitutes impermissible spot reassessment. We disagree.

Section 8817 of the Law, 53 Pa.C.S. §8817 (emphasis added), states:

(a) General rule. - In addition to other authorization provided in this chapter, the assessors may change the assessed valuation on real property when a parcel of land is subdivided into smaller parcels or when improvements are

---

[4] As factfinder, the trial court has exclusive province over questions of witness credibility and evidentiary weight. *In Re: Penn Delco School District*, 903 A.2d 600, 608 (Pa. Cmwlth. 2006). Consequently, "this Court is prohibited from making contrary credibility determinations or reweighing the evidence in order to reach an opposite result." *Id.*

[5] Our scope of review in a tax assessment appeal is limited to determining whether the trial court abused its discretion or committed an error of law, or whether its decision is supported by substantial evidence. *Radecke,* 798 A.2d at 266.

5

made to real property or existing improvements are removed from real property or are destroyed. The recording of a subdivision plan shall not constitute grounds for assessment increases until lots are sold or improvements are installed. The painting of a building or the normal regular repairs to a building aggregating $2,500 or less in value annually shall not be deemed cause for a change in valuation.

(b) Construction. - *A change in the assessed valuation on real property authorized by this section shall not be construed as a spot reassessment under section 8843 (relating to spot reassessment).*

Taxpayers acknowledge that under Section 8817(a) of the Law, assessors may change the assessed valuation on real property when improvements are made to real property and that Section 8817(b) of the Law specifically provides that a "change in the assessed valuation on real property authorized by this section shall not be construed as a spot reassessment . . . ." 53 Pa.C.S. §8817(b). However, Taxpayers maintain that the Law is well-settled that "the assessment of improvements *must take place when the improvements are made and not at some arbitrary time in the future*, or a board of assessment will be guilty of spot assessment." *Shenandoah Mobile Co. v. Dauphin County Board of Assessment Appeals*, 869 A.2d 562, 565 (Pa. Cmwlth. 2005) (emphasis added).

Taxpayers argue that the previous owners obtained a building permit in 2010, and that all of the improvements to the Property were made before Taxpayers purchased the Property in 2013. Taxpayers argue that the County did not reassess the Property until June 2015, which was nineteen months after they purchased the Property. Relying on *Duke Energy Fayette II, LLC v. Fayette County Board of Assessment Appeals*, 116 A.3d 1176, 1179 (Pa. Cmwlth. 2015), Taxpayers argue that the County unreasonably delayed imposition of the reassessment, rendering it invalid.

6

In *Duke Energy*, the property owner acquired 400 acres of property in 2001 and 2002, and created a separate 60-acre tract on which the owner proposed to operate a gas-fired electric-generating station. The owner applied for and received a real estate tax abatement that ran on the 60 acres from 2001 through 2011. In the fall of 2003, the property owner completed construction of the electric generating station. Although the county was notified and made aware of the improvement, the county chose not to immediately reassess the property until the tax-abatement status was set to expire. After the tax abatement expired eight years later in 2011, the county reassessed the property. The county board of assessment appeals denied the property owner's appeal, as did the trial court.

On further appeal, this Court concluded that although it may have been reasonable for the county to reassess the property once the tax abatement expired, the Law requires reassessment upon completion of improvements. We observed that the county did not mistakenly fail to assess the property but, instead, intentionally chose to postpone the assessment until the tax abatement expired. Because the county did not comply with the Law and reassess the property at the time the improvements were completed, we held in *Duke Energy* that the county engaged in spot reassessment. *Id.*

In contrast to those facts, the trial court credited Detweiler's testimony that she checked on the construction at the Property on a number of occasions and, in her opinion, the construction began in 2011 and continued beyond her visit in May 2014. Importantly, the trial court made no finding as to when the construction was actually completed. However, the trial court found that Detweiler reasonably concluded that the construction was finally completed when she visited the property in April 2015. There is no indication that the County intentionally or negligently delayed applying the value of the improvements to the Property's reassessment.

7

Indeed, Taxpayers' argument relies solely on the passage of time; they do not address Detweiler's testimony; they do not argue that the Law requires field assessors to view properties more frequently or that the timing of the field appraiser's visits in this case was arbitrary. In contrast to the facts in *Duke Energy*, Taxpayers do not contend that the County intentionally or negligently delayed the reassessment.

We agree with the trial court's determination that the reassessment of the Property was not made "at some arbitrary time in the future" and did not constitute impermissible spot reassessment. In reaching this conclusion, we recognize that the statutory scheme, insofar as it contains no specific requirements governing the timing of appraisal visits or timelines for applying the value of improvements to a property's reassessment, may result in potentially painful surprises to unwary purchasers of property. Unfortunately, while we are not unsympathetic, it is not within the power of this Court to fashion a remedy for such occurrences.

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cole Fasnacht and               :
Courtney Fasnacht, his wife,     : No. 356 C.D. 2016
                                               :
                 Appellants     :
                                                 :
                  v.                  :
                                                   :
Board of Property Assessment    :
Appeals of Schuylkill County      :
                                                 :
                  v.                  :
                                                   :
Schuylkill County, South Manheim   :
Township, and Schuylkill Haven     :
Area School District               :

## O R D E R

AND NOW, this 9<u>th</u> day of <u>March</u>, 2017, the order of the Court of Common Pleas of Schuylkill County, dated February 9, 2016, is affirmed.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cole Fasnacht and                          :
Courtney Fasnacht, his wife,               : No. 356 C.D. 2016
                                           : Submitted: October 21, 2016
                          Appellants       :
                                           :
            v.                             :
                                           :
Board of Property Assessment               :
Appeals of Schuylkill County               :
                                           :
            v.                             :
                                           :
Schuylkill County, South Manheim           :
Township, and Schuylkill Haven             :
Area School District                       :


BEFORE:   HONORABLE  P. KEVIN BROBSON,  Judge
          HONORABLE  MICHAEL H. WOJCIK,  Judge
          HONORABLE  ROCHELLE  S. FRIEDMAN, Senior Judge

DISSENTING  OPINION
BY SENIOR JUDGE FRIEDMAN                    FILED:  March 9, 2017

          Because the Law requires reassessment upon completion of the improvements and the record is inadequate for this court to determine when improvements to the Property were completed, I respectfully dissent and would vacate the trial court's order and remand for an additional hearing.


          Debra Detweiler testified that she obtained and reviewed a 2010 permit issued to Vernon and Marianne Blankenhorn to enclose a patio on the Property. (N.T., 12/9/15, at 5.) Detweiler agreed that building permits are generally valid for one year. *(Id.* at 31.) Detweiler testified that she first visited

RSF - 1 -

the Property on January 5, 2011, and the homeowners had just started construction on the rear of the home, which they were doing themselves. *(Id.* at 9, 35.)* Detweiler further testified that she determined that construction was completed on April 20, 2015, because there was no lumber stacked outside,[1] no activity outside, and curtains hung in the living area above the garage. *(Id.* at 11-12.)* Detweiler testified that she was not aware that the Property had changed ownership and that construction on the house could have been completed during one of her visits in 2013 or 2014. *(Id.* at 29-30, 33, 35, 39.)* In fact, Detweiler acknowledged that there was no way for her to know when construction was completed. *(Id.* at 38-39.)* She just made the determination that the construction was completed upon her visit in 2015. *(Id.* at 39.)*

Cole Fasnacht testified, without contradiction, that the previous owners obtained a building permit and constructed a garage and addition to the Property. *(Id.* at 47.)* After purchasing the Property on November 6, 2013, Fasnacht did not perform any construction on the Property, only making cosmetic repairs and changes to the landscaping. *(Id.)* Additionally, he testified that before he purchased the Property curtains hung in the living area above the garage. *(Id.* at 48.)* Fasnacht stated that he was told by bank employees that taxes on the Property would not increase once the Property was titled in his name. *(Id.* at 52.)*

---

[1] Detweiler testified that she did not know if the lumber she saw on a previous occasion was being used for the interior of the garage or for decking purposes. (N.T., 12/9/15, at 33.)

None of the testimony or evidence presented to the trial court answers the question of when improvements to the Property were completed. The majority recognizes this deficiency stating "*[i]mportantly*, the trial court made no finding as to when the construction was actually completed." (Maj. Op. at 7 (emphasis added).) However, the Law requires reassessment upon completion of the improvements and not at some arbitrary point in time. *Duke Energy Fayette II, LLC v. Fayette County Board of Assessment Appeals,* 116 A.3d 1176, 1179 (Pa. Cmwlth. 2015). Thus, it must be determined when the improvements were completed.

Moreover, although Detweiler introduced two photographs, one taken in August 1995 and the other in September 2015, the photographs do not depict the Property at the time the building permit was issued, during the construction process, or at the time the construction was completed. Specifically, the first picture was taken eight years *before* the building permit was issued and the most recent picture was taken approximately five months *after* Detweiler determined that the construction was completed.

Detweiler's credited testimony is insufficient for purposes of determining when the construction on the Property was completed. Detweiler changed the assessment when she "believed" that the construction was completed. (Trial Ct. Op. at 6.) However, Detweiler never definitively stated when the construction was completed. She "believed" that construction was complete in 2015 because she did not see workers and saw curtains hanging on the windows. (N.T., 12/9/15, at 11-12.) However, the only time Detweiler saw

RSF - 3 -

workers was during her initial 2010 visit. *(Id.* at 30, 33.) Additionally, Detweiler testified that "[t]here very well could have been" curtains on the windows before April 2015; she could not recall. *(Id.* at 35.) Detweiler's stated "belief" is insufficient for purposes of determining when the construction on the Property was completed.

Additionally, because the building permit was issued in 2010, and building permits are generally valid for only one year, I submit that reassessment five years later can constitute an "arbitrary time in the future." (Maj. Op. at 8.)

For the foregoing reasons, I would vacate the trial court's order and remand for a supplemental hearing to determine when the improvements to the Property were completed.

_____
ROCHELLE S. FRIEDMAN, Senior Judge