**HERSHEY'S MILL HOMEOWNER'S ASSOCIATION, Appellant**

v.

**CHESTER COUNTY and Chester County Board of Assessment Appeals and East Goshen Township and West Chester School District.**

Commonwealth Court of Pennsylvania.

Argued Nov. 2, 2004.
Decided Nov. 22, 2004.
Reargument Denied Jan. 21, 2005.

---

assertion of capricious disregard under this

standard. *Accord Wintermyer; Christopher.*

Joseph P. O'Brien, Media, for appellant.

John K. Fiorillo, West Chester, for appellee, West Chester Area School District.

Jeffrey R. Sommer, West Chester, for appellee, Chester County Board of Assessment Appeals.

BEFORE: PELLEGRINI, Judge, FRIEDMAN, Judge, JIULIANTE, Senior Judge.

OPINION BY Judge PELLEGRINI.

Hershey's Mill Homeowner's Association (the Association) appeals from an order of the Court of Common Pleas of Chester County (trial court) that it was collaterally estopped from relitigating the issue of whether its golf course constituted a "common facility" under Section 5103 of the Pennsylvania Uniform Planned Community Act (Act), 68 Pa.C.S. § 5103, and was exempt from taxation under Section 5105(b)(1) of the Act, 68 Pa.C.S. § 5105(b)(1).

This case was previously before us four years ago. The Association appealed an order of the trial court affirming the decision of the Chester County Board of Assessment Appeals (Board) denying the Association's tax assessment appeal from the $2,500,000 assessment of its golf course for tax years 1998 and 1999, but reassessing the golf course at $4,275,000. The Associ-

ation appealed under Section 5105(b)(1) of the Act, 68 Pa.C.S. § 5105(b)(1),[1] arguing that the value of the golf course should not have been assessed because it did not have independent economic value from the rest of the property which was comprised of an age-restricted country club community consisting of approximately 20 villages with 1,500 homes. The trial court determined that the golf course was not a "common" or "controlled facility" and was to be assessed separately from the rest of the property.

We affirmed, noting that the golf course was not a "common facility" by definition under Section 5103 of the Act, 68 Pa.C.S. § 5103, which defines "common facilities" as "any real estate within a planned community which is owned by the association or leased to the association. The term does not include a unit."[2] We explained that the golf course was "a separate entity to which any person can be admitted if the appropriate fees are paid. We also noted the trial court's explanation in its decision for rejecting the golf course as a common facility:

> The property is not maintained or controlled by the Homeowners' Association. Although the real estate is titled in the name of the Association, it is subject to a 99 year lease in favor of Hershey's Mill Golf Club, Inc. This corporation is responsible for the property. Moreover, the statute specifically points out that a common facility does not include a unit. As set forth above, a unit is defined as part of a planned community which is designated for separate occupancy. In the instant case, Hershey's Mill Golf Club, Inc. is occupying the property for purposes of operating a golf course. The Association does not occupy nor have any right to the Golf Course during the tenancy. The Golf Course is designated for separate occupancy and therefore, by definition, is not a common facility.

(*Hershey's I* at 7.)

Keenly aware of our decision, in 2002, the Association again appealed the assessment of the golf course for the tax year 1999, as well as tax years 2000 through 2003.[3] It made the same argument as

---

1. Section 5105(b)(1) of the Act, 68 Pa.C.S. § 5105(b)(1), provides the following:

 **Taxation and assessment.** If there is a unit owner other than a declarant, each unit must be separately taxed and assessed. The value of a unit shall include the value of that unit's appurtenant interest in the common facilities, excluding convertible or withdrawable real estate. The following shall apply:

 (1) Except as provided in paragraph (2), no separate assessed value shall be attributed to and no separate tax shall be imposed against common facilities or controlled facilities.

 (2) Convertible or withdrawable real estate shall be separately taxed and assessed until the expiration of the period during which conversion or withdrawal may occur.

2. A "unit" is defined under that same section as "a physical portion of the planned community designated for separate ownership or occupancy, the boundaries of which are described pursuant to section 5205(5) (relating to contents of declaration; all planned communities) and a portion of which may be designated by the declaration as part of the controlled facilities." A "controlled facility" is defined as "any real estate within a planned community, whether or not a part of the unit, that is not a common facility but is maintained, improved, repaired, replaced, regulated, managed, insured or controlled by the association." (*Hershey's Mill Homeowner's Association v. Chester County Board of Assessment Appeals*, (No. 2535 C.D.1999, filed November 9, 2000 at 6) (*Hershey's I*)), petition for allowance of appeal denied, (No. 896 MAL 2000, filed June 27, 2001).

3. The parties stipulated to the factual evidence previously presented to the trial court and that the current assessment of the proper-

before, i.e., that the golf course was a "common facility" under the Act and was exempt from taxation based on the argument that the law had changed since our decision in *Hershey's I* pursuant to this Court's decision in *Saw Creek Estates Community Association, Inc. v. County of Pike,* 808 A.2d 322 (Pa.Cmwlth.2002), *petition for allowance of appeal granted,* 572 Pa. 751, 816 A.2d 1104 (2003), and the golf course was now exempt from taxation. The trial court issued an order that the Association was collaterally estopped from relitigating that issue because it was previously decided in *Hershey's I* and further explained at length in a memorandum opinion why our decision in *Saw Creek* was not a change in the law. It is from this order and opinion that the Association has filed its appeal with this Court.

The Association argues that the trial court erred in finding that it was collaterally estopped from relitigating the issue of whether the golf course is a "common facility" under the Act and exempt from taxation based on the more recent case of *Saw Creek* which it contends clearly holds that occupancy and the use of common areas owned by a homeowners' association under the Act does not affect the status of property as a common facility under the Act. The Board and the West Chester Area School District, however, argue that the Association is collaterally estopped from relitigating this matter which was previously decided in *Hershey's I* because the law was not changed in *Saw Creek* and our decision in *Hershey's I* remains controlling.

The question of whether collateral estoppel applies to prevent a party from relitigating an issue previously decided when 1) the law may have changed and 2) when additional tax years are involved that were not involved in the previous litigation was

discussed at length in *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948), a case involving personal income tax liability. The Supreme Court first addressed the difference between the doctrines of res judicata and collateral estoppel, explaining that res judicata applied to repetitious suits involving the same cause of action, stating that once the court had entered a final judgment on the merits, the parties were bound by that decision. "The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment." *Id.* at 597, 68 S.Ct. 715. The Court continued to explain:

> But where the second action between the same parties is upon a different cause or demand, the principle of res judicata is applied much more narrowly. In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but "only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." (Citations omitted.) Since the cause of action involved in the second proceeding is not swallowed by the judgment in the prior suit, the parties are free to litigate points which were not at issue in the first proceeding, even though such points might have been tendered and decided at that time. But matters which were actually litigated and determined in the first proceeding cannot be relitigated. Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel. In this sense, res judicata is usually and more

ty for all of the tax years in question is the

same—$4,275,000 per year.

accurately referred to as estoppel by judgment, or collateral estoppel.

*Id.* at 597–598, 68 S.Ct. 715. Applying these concepts to the field of taxation, the Court began by stating that each tax year was the "origin of a new liability and of a separate cause of action," *Id.* at 598, 68 S.Ct. 715, because income taxes were levied annually. It then explained that if a claim of non-liability regarding a specific tax year was litigated, a judgment on the merits was res judicata as to a subsequent proceeding involving the same claim and the same tax year. However, if the subsequent proceeding involved a similar or different claim regarding a different tax year, the prior judgment would only act to collaterally estop those matters in the second proceeding that were actually presented in the first suit.

However, recognizing that a change in the laws could have a deleterious effect on taxpayers, consequences not intended by the principles of collateral estoppel, the Court noted that a "subsequent modification of the significant facts or a change or development in the controlling legal principles may make [a previous determination] obsolete or erroneous, at least for future purposes. If such a determination is then perpetuated each succeeding year as to the taxpayer involved in the original litigation, he is accorded a tax treatment different from that given to other taxpayers of the same class. As a result, there are inequalities in the administration of the revenue laws, discriminatory distinctions in tax liability and a fertile basis for litigious confusion." *Id.* at 599, 68 S.Ct. 715. The Court went on to state:

> And so where two cases involve income taxes in different taxable years, collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice. It must be confined to situations where the matter raised in the

second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged. (Citations omitted.) If the legal matters determined in the earlier case differ from those raised in the second case, collateral estoppel has no bearing on the situation ... As demonstrated by *Blair v. Commissioner,* 300 U.S. 5, 9, 57 S.Ct. 330, 81 L.Ed. 465, a judicial declaration intervening between the two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable ... In either event, the supervening decision cannot justly be ignored by blind reliance upon the rule of collateral estoppel.

> Of course, where a question of fact essential to the judgment is actually litigated and determined in the first tax proceeding, the parties are bound by that determination in a subsequent proceeding even though the cause of action is different. (Citations omitted.) *And if the very same facts and no others are involved in the second case, a case relating to a different tax year, the prior judgment will be conclusive as to the same legal issues which appear, assuming no intervening doctrinal change.*

*Sunnen,* 333 U.S. at 599–601, 68 S.Ct. 715. Even though the Supreme Court's opinion dealt with personal income tax, we find that its reasoning is equally applicable to real estate tax appeals as have other states which have applied its reasoning to real estate and other types of tax cases. *See e.g., Hubbard Press v. Tracy, Tax Commissioner,* 67 Ohio St.3d 564, 621 N.E.2d 396 (1993); *Pike v. City of Wyoming,* 431 Mich. 589, 433 N.W.2d 768 (1988); *Blair v. Taxation Div. Director,* 225 N.J.Super. 584, 543 A.2d 99 (1988); *Group Health, Inc. v. Tax Com. of New York,* 93 A.D.2d 730, 461 N.Y.S.2d 28 (1983); *Weaver v.*

*Prince George's County,* 34 Md.App. 189, 366 A.2d 1048 (1976).

 Because it is clear from the Court's decision that in deciding whether collateral estoppel[4] applies to this case, we must first determine whether there has been a change in the law by virtue of our decision in *Saw Creek.*[5] If no change in the law has occurred, then *Sunnen* holds that a party will be collaterally estopped from relitigating the same issues regarding subsequent and different tax years, even though different tax years are normally considered a new cause of action. We have reviewed our decision in *Saw Creek* and disagree with the Association that *Saw Creek* is a change in the law as to the definition and taxation of "common facilities." As the trial court explained in its memorandum opinion:

> Appellant alleges the law regarding their collaterally estopped claim has changed according to *Saw Creek Estates* ... Appellant believes because the golf course property of the Hershey's Mill Homeowners Association is *within* and *owned* by the Homeowner's Association, the property falls within the definition of "common facility" pursuant to 69 Pa. Cons.Stat. § 5101(b)91) and is exempt from taxation. Appellant's reliance on *Saw Creek* is misplaced.
>
> The *Saw Creek* Court found a restaurant and a real estate office, operated by business entities in two buildings owned

by a housing development association, constituted "common facilities" exempt from separate property taxation. The facts of *Saw Creek* are distinguishable from our case because in *Saw Creek* the restaurant primarily served the development's citizens, who also received a discount, and the real estate office only dealt with properties in the development. As we previously found in our February 1, 2000 Opinion, the residents of Hershey's Mill do not enjoy a free easement regarding the use and enjoyment of the golf course. While residents receive priority in applying for membership, the golf course operates as a separate entity much like any other private club. Hershey's Mill Golf Club, Inc. retains all economic benefit from operating the golf course. Furthermore, the restaurant in *Saw Creek* paid an annual rent of $12,000 and the real estate office paid 10% of gross commissions, which would not be less than $24,000 or more than $50,000 for the year. Golf Club, Inc. only pays $10 for the entire year.

(Trial Court's March 16, 2004 opinion at 1–2.) As to tax year 1999, no appeal can be taken by the Association because res judicata applies. As to tax years 2000 through 2003, because there has been no change in the law, all that is before us is the identical issue that was raised before the courts in

---

4. This Court has also held that collateral estoppel will preclude the subsequent review of an issue where:

· The issue decided in the prior action was identical with the one presented in the later action;

· The prior action resulted in a final judgment on the merits;

· The party against whom the plea is asserted was a party or in privity with the party to the prior adjudication; and

· The party against whom collateral estoppel is asserted had a full and fair opportunity to

litigate the issue in question in the prior action.

*Shapiro v. State Board of Accountancy,* 856 A.2d 864 (Pa.Cmwlth.2004).

5. *See Borough of Prospect v. Bauer,* 715 A.2d 1244 (Pa.Cmwlth.1998), *petition for allowance of appeal denied,* 559 Pa. 680, 739 A.2d 544 (1999), where this Court also held that collateral estoppel will not bar a subsequent action on the same matter when there has been a change in the law.

1999. On November 9, 2000, the matter was conclusively decided with a final decision being issued by this Court in *Hershey's I*. There is no question that the parties in this proceeding were the same litigants in *Hershey's I*, and the Association had a full and fair opportunity to litigate the issue regarding the golf course in *Hershey's I*. Consequently, the Association is collaterally estopped from relitigating the issue of whether the golf course is a common facility and exempt from taxation for tax years 2000 through 2003 based on the reasoning set forth in *Sunnen*.[6]

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 22nd day of November, 2004, the order of the Court of Common Pleas of Chester County, dated January 16, 2004, is affirmed.

---

**6.** We note again that the 99–year lease by the Association to Golf Club, Inc. is tantamount to ownership and is taxable. The trial court explained in its memorandum opinion:

> The interests of a lessee under an estate for years are subject to taxation where there are indicia that the title to the leasehold remains in the lessee during the term. *Venango Federal Savings and Loan Association v. County of Venango*, 73 Pa. Cmwlth. 313, 457 A.2d 1340 (1983). Hershey's Mill Homeowners Association leased the golf course to Golf Club, Inc. which is responsible for all operations and maintenance of the golf course and generates an independent income from the Homeowners Association. Consequently, the title to the leasehold is not with the Homeowners Association and is therefore subject to separate taxation. Furthermore, it is the intention of the parties to a lease which determines the ownership of the property. *Blue Knob Recreation, Inc. Assessment Appeal; In re: Costar Marine Tax Assessment Appeal*, 33 Pa.Cmwlth. 447, 382 A.2d 156 (1978). In light of the lease's long duration, 99 years, and the insignificant annual rent payments of $10.00, we find the parties intended Golf Club, Inc. have ownership of the property in question. The golf course is not a "common facility" and therefore, is subject to separate taxation.

(Trial court's March 16, 2004 opinion at ftnt. 1.)