# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James B. Blanda and
Suzanne R. Blanda

v.

Somerset County Board
of Assessment Appeals

v.

Somerset County, Jefferson
Township, and Somerset Area
School District

Appeal of: James B. Blanda

:
: No. 1934 C.D. 2014
: Argued: November 16, 2015
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

BEFORE: HONORABLE BERNARD L. McGINLEY, Judge
HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION
BY SENIOR JUDGE FRIEDMAN                    FILED: January 6, 2016

James B. Blanda (Blanda) appeals from the September 22, 2014, order of the Court of Common Pleas of Somerset County (trial court) denying Blanda and Suzanne R. Blanda's (collectively, the Blandas) assessment appeal and affirming the Somerset County Board of Assessment Appeals' (BAA) decision to correct the Blandas' property assessment to $85,910. We affirm in part, reverse in part, and remand to the trial court to adjust the assessment accordingly.

The Blandas own 7.49 acres of land (Property) designated as parcel number 001-20-0-003850 in Jefferson Township, Somerset County. The Property is improved with a house in which the Blandas reside and a lodge that is rented out seasonally. In 2008, the Property was assessed at $64,080. In 2013, the Somerset County Assessment Office (Assessment Office) did not perform a county-wide tax assessment but increased the Blandas' property assessment to $86,440 on June 10, 2013. The lodge was the only part of the Property that affected the increase. The Blandas requested a hearing on the new assessment. After the hearing, the BAA reduced the new assessment to $85,910.[1] The Blandas appealed to the trial court.

On September 22, 2014, the trial court held a hearing at which the Blandas claimed that they were "selectively targeted" for reassessment. Blanda testified that he believed his Property was being reassessed on the basis of a zoning change and that none of his similarly situated neighbors were reassessed.

Mary Ann McKenzie, the Assessment Office's Assistant Chief Assessor, testified that the Assessment Office routinely checks real estate listings and rental listings on the internet to make sure descriptions of real estate located in the county match the assessed descriptions. McKenzie stated that her employees discovered a discrepancy in the Blandas' property assessment while searching the internet. Specifically, a rental advertisement listed the lodge's living space at 4,400 square feet, whereas the 2008 assessment description listed its living space at 2,206 square feet.

---

[1] The assessment was changed from $86,440 to $85,910 based upon an error in the number of bathrooms in the lodge.

After the discovery, the Assessment Office sent two field workers to measure the Blandas' lodge. The field workers determined that: the lodge was not one story, as described in the 2008 assessment, but was two-and-one-half stories; the garage had been measured incorrectly;[2] the number of bathrooms was incorrect; and the grading of D-plus was incorrect.[3] The field workers gave McKenzie measurements of the lodge, from which McKenzie made a sketch of the lodge, entered the drawing into the computer, and determined the square footage and assessment figures. From this process, McKenzie determined that the lodge was 4,274 square feet. McKenzie further testified that she only included the lodge's interior space and did not include the outside deck or the garage in her calculations.

Candace Jane Rizzo, the Assessment Office's Chief Assessor, similarly testified that she instructs her staff to look at newspapers, the internet, and real estate guides to check for discrepancies in assessment information. If a discrepancy is found, a field worker is sent to the property and corrections are made to the assessment. Rizzo stated that the correct assessment for the Property is $85,910. She further stated that the Assessment Office can correct an assessment if it contains a mistake.

Blanda testified that the last improvements to the Property were done between 1995 and 2000, during a remodeling and rebuilding project. The Property was reassessed in 2008, and since then no improvements have been made to the

---

[2] The 2008 assessment listed the garage at 1,205 square feet. The 2013 assessment correctly listed the garage as 736 square feet. The garage was not considered in calculating the living space.

[3] The grading was changed from D-plus to C-minus.

Property. In 2013, a field worker from the Assessment Office came to the Property with a rental advertisement in hand. The rental advertisement listed the Property at 4,400 square feet. The 2008 assessment card listed the Property at 2,206 square feet. Blanda testified that the discrepancy was advertising hyperbole, explaining that "when I said 4[,]400 square feet, I included all of the cement pads where people could go outside. I included the deck spaces. I included all of the storage spaces. I included the hot tub area. I included the fire pit area. All of the places where people could congregate and enjoy the [P]roperty." (N.T., 9/22/14, at 25-26.) Blanda stated that the lodge does not have 4,400 square feet of living space and that no improvements have been made to the Property since the last assessment in 2008.

The trial court stated that it was "satisfied based on the testimony of the assessment staff that they do in fact change assessments based on external factors, whether it's an Internet base or whether [they] happen[] to drive by and recognize that there's a garage that wasn't there last year when they dr[o]ve by. Whatever it might be that brings things to their attention, I think that can form a basis for them to go and reassess." (*Id.* at 89-90.) The trial court "found that the lodge was incorrectly measured in 2008 at 2,206 square feet, while in reality it was and has been 4,274 square feet." (Trial Ct. Op. at 4.) On September 22, 2014, the trial court denied the Blandas' assessment appeal, affirming the corrected assessment. Blanda now appeals to this court.[4]

---

[4] Our review in a tax assessment appeal is limited to determining whether the trial court abused its discretion or committed an error of law or whether its decision is supported by substantial evidence. *In re Young*, 911 A.2d 605, 608 n.7 (Pa. Cmwlth. 2006).

Initially, Blanda contends that the Assessment Office did not have cause to reassess the Property in 2013. Specifically, Blanda asserts that the reassessment amounted to a spot reassessment, which is defined in section 8802 of the Consolidated County Assessment Law (Assessment Law) as "[t]he reassessment of a property or properties . . . that is not conducted as part of a countywide revision of assessment and which creates, sustains or increases disproportionality among properties' assessed values." 53 Pa. C.S. §8802. Section 8843 of the Assessment Law provides that "[t]he [c]ounty assessment office is prohibited from engaging in the practice of spot reassessment." 53 Pa. C.S. §8843.

In *In re Young*, 911 A.2d 605, 608-09 (Pa. Cmwlth. 2006), this court stated five circumstances where a county may reassess property:

> It is generally acknowledged that, once a value has been established for a taxable property, that value cannot be changed absent one of the following circumstances: (1) undertaking of a countywide reassessment; (2) appeal of property assessment by either the landowner pursuant to section [8844] of the Assessment Law . . . or by the taxing authority under section [8855] of the Assessment Law . . . ; (3) need for a downward adjustment is necessary under section [8815] of the Assessment Law . . . ; (4) need to correct a mathematical or clerical error [pursuant to section 8816 of the Assessment Law] . . . ; or (5) presence of one of the three conditions outlined in section [8817] of the Assessment Law . . . .[5] When none of these circumstances

_____

[5] Section 8817 of the Assessment Law provides for changing the assessed value of a piece of property when: (1) the property is subdivided; (2) improvements are made to a property; or (3) when existing improvements are removed from the property or are destroyed. 53 Pa. C.S. §8817.

exists, a taxing authority's reassessment of property constitutes an impermissible spot reassessment.[6]

Here, the Assessment Office corrected the Blandas' assessment on the basis of a mathematical or clerical error. Section 8816 of the Assessment Law provides:

**Clerical and mathematical errors**

**(a) Correction. --**If, through mathematical or clerical error, an assessment is higher than it should have been and taxes are paid on such incorrect assessment, the county assessment office, upon discovery of the error and correction of the assessment, shall so inform the appropriate taxing district or districts, which shall make a refund to the taxpayer . . . . Reassessment, with or without application by the owner, as a decision of judgment based on the method of assessment, shall not constitute an error under this section.

**(b) Increases. --**Nothing in this section shall be construed as prohibiting an assessment office from increasing an assessment for the current taxable year upon the discovery of a clerical or mathematical error.

53 Pa. C.S. §8816. The Assessment Office has the power to correct erroneous and improper assessments due to mathematical or clerical errors in order to achieve uniformity. *Callas v. Armstrong County Board of Assessment*, 453 A.2d 25, 27 (Pa. Cmwlth. 1982).

---

[6] Sections 701, 706, 703.3, and 602.1 of the Fourth to Eighth Class County Assessment Law, Act of May 21, 1943, P.L. 571, *as amended*, 72 P.S. §§5453.701, 5453.706, 5453.703.3c, and 5453.602a, were repealed and replaced by the Assessment Law, effective January 1, 2011.

6

In *Callas*, the Armstrong County Board of Assessment Appeals (board) directed its chief assessor to recheck all property assessments in the county. 453 A.2d at 26. The chief assessor discovered that the taxpayers' land assessment was incorrect under the 1956 reassessment requirement. *Id.* The 1956 reassessment established a $500-per-front-foot valuation for land in that area; however, upon purchase, the taxpayers' property was appraised at $300 per front-foot. *Id.* at 25-26. To correct this error, the chief assessor adjusted the land appraisal to reflect a per-front-foot value of $500, which resulted in an assessment increase of approximately $5,000. *Id.* at 26. Taxpayers contested the increase as a spot reassessment. *Id.*

The *Callas* court determined that the Assessment Law is intended "to achieve uniformity of assessments throughout each . . . county." *Id.* at 27. We further stated:

> If the taxing authority were not permitted to correct clerical or mathematical assessment errors, uniformity would not be maintained and such non-uniform assessments would be illegal as violative of both our Constitution and the Assessment Law. Such a result is absurd and would result in some taxpayers bearing an excessive tax burden. Accordingly, we conclude that the [b]oard has the power (and, indeed, the *duty*) to correct erroneous and improper assessments to achieve the mandated uniformity.

*Id.*

Here, the trial court found that the assessment record for the lodge contained errors, the most significant of which was the description of the lodge as a one-story, rather than a two-and-one-half-story, structure. This error resulted in the square footage of living space in the lodge being grossly miscalculated and

understated. After being alerted to this possible error in the assessment record, the Assessment Office sent field officers to measure the Property and correct the assessment record.[7] Like *Callas*, these mathematical and clerical corrections to the record were made to accurately reflect the information at the time of the last county-wide reassessment. These corrections deal strictly with the clerical and mathematical errors made in the information describing the lodge on the assessment record.[8] The reassessment changed the grade of the Property and the number of stories, and doubled the square footage.[9]

The Assessment Office found the error regarding the number of stories in the assessment records and corrected the error so that the Property would be assessed the same as other properties containing the same size building. The trial court did not err in correcting the assessment record to reflect the correct number of stories and, thus, the correct square footage.

However, the trial court did err in determining that the Assessment Office could change the grade of the Property from D-minus to C-plus based upon information from the field officers "on construction and type of materials, photos, and

---

[7] To Blanda's benefit, the assessment was also corrected where it mistakenly showed the lodge as having a basement and a larger garage. In addition, the numbers of bathrooms and kitchens were corrected.

[8] The trial court is the factfinder in assessment appeals and has the discretion to determine the weight of the evidence and credibility of the witnesses. *1198 Butler Street Associates v. Board of Assessment Appeals, County of Northampton*, 946 A.2d 1131, 1138 n.7 (Pa. Cmwlth. 2008).

[9] Blanda also contends that the Assessment Office did not have the right to reassess him based upon improvements made to the Property. The Assessment Office does not contend that it assessed the Property based upon improvements; therefore, we do not address this argument.

opinion." (Assessment Office's Br. at 18.) The basis for the change in the construction grade does not amount to a mathematical or clerical correction to the assessment records. The field workers recommended changing the construction grade as a result of their current view of the Property, not because of an error in the record. Thus, because the Assessment Office failed to show a mathematical or clerical error regarding the grading, this alteration is not permitted.

Next, Blanda contends that the Assessment Office's method of reassessing based upon scouring the internet, newspapers, and real estate listings constitutes an improper, *de facto* county-wide assessment. Advertising exaggerations should not become an open door for governmental scrutiny. The use of external factors and extrinsic information to constantly reevaluate assessments provides Somerset County a method to illegally reassess and avoid conducting a county-wide reassessment.

In *O'Merle v. Monroe County Board of Assessment Appeals*, 504 A.2d 975, 975 (Pa. Cmwlth. 1986), during a routine field check of the property, the assessment office discovered two flues, which indicated two fireplaces. The assessment records only showed one fireplace. *Id.* at 976. Two appraisers were sent to reassess the property and discovered the additional fireplace and enclosed porches. *Id.* A new assessment was issued, increasing the cost and design factor, increasing the grade factor, eliminating a depreciation factor, and revising the ladder computation of the property's value. *Id.* The change in grade factor and depreciation factor reflected new policies not in effect at the time of the last county-wide reassessment. *Id.* at 976 n.4. This court reversed and remanded, finding the new

9

assessment did not fit the *Callas* exception because it went beyond mere record corrections by including a new method of assessment. *O'Merle*, 504 A.2d at 977. This court, however, recognized that part of the reassessment may have been legally permissible under *Callas*, noting that the initial factors of an undiscovered second fireplace and recently enclosed porch might arguably have been the animus for adjusting the assessment, and, therefore, remanded the case for further proceedings. *O'Merle*, 504 A.2d at 977.

The Assessment Office's purpose in checking newspapers, the internet, and real estate guides is to discover and ultimately correct errors and to find unreported improvements made by property owners without first procuring building permits.[10] Like *O'Merle*, where the second flue was discovered during a routine field check, the lodge's second story was discovered during an internet search of the Property. Thus, the Assessment Office's practice of searching the internet and checking newspapers and real estate guides to correct errors in existing property assessments is not a *de facto* county-wide reassessment.

The trial court did not err or abuse its discretion in determining that the Assessment Office can correct mathematical or clerical errors regarding the number of stories and, thus, the amount of square footage in a building, thereby correcting the assessment record and increasing the amount of taxes owed to achieve mandated uniformity. However, the trial court did err in determining that the Assessment

---

[10] Changing assessments to reflect improvements is specifically authorized by section 8817 of the Assessment Law, 53 Pa. C.S. §8817.

10

Office can change the grade based upon information from the field crew because no clerical or mathematical error was shown in this respect.

Therefore, we affirm in part, reverse in part, and remand this matter to the trial court to adjust the assessment accordingly.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James B. Blanda and         :
Suzanne R. Blanda          : No. 1934 C.D. 2014
                                    :
             v.             :
                                    :
Somerset County Board      :
of Assessment Appeals      :
                                    :
             v.             :
                                    :
Somerset County, Jefferson   :
Township, and Somerset Area  :
School District             :
                                    :
Appeal of: James B. Blanda   :

## O R D E R

AND NOW, this 6th day of January, 2016, the order of the Court of Common Pleas of Somerset County (trial court) dated September 22, 2014, is hereby affirmed in part, reversed in part, and this matter remanded to the trial court to adjust the assessment accordingly.

Jurisdiction relinquished.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James B. Blanda and Suzanne
R. Blanda

      v.

Somerset County Board of
Assessment Appeals

      v.

Somerset County, Jefferson
Township, and Somerset Area
School District

Appeal of: James B. Blanda

:
:
:
:
:    No. 1934 C.D. 2014
:
:    Argued:  November 16, 2015
:
:
:
:
:
:
:
:
:
:
:
:

BEFORE:    HONORABLE BERNARD L. McGINLEY, Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

**DISSENTING OPINION BY**
**JUDGE COHN JUBELIRER**            **FILED:  January 6, 2016**

     I respectfully dissent.  Although I agree with the majority's analysis regarding the changes to the assessment of the property owned by James B. Blanda and Suzanne R. Blanda (Blandas) based on the square footage and number of stories, I would also find that the Somerset County (County) Assessment Office (Assessment Office) also properly changed the assessment based on the increase in

the construction grade for the Blandas' property. Therefore I would affirm the Somerset County Court of Common Pleas (common pleas) in its entirety.

Section 8816(b) of the Consolidated County Assessment Law, 53 Pa. C.S. § 8816(b), allows a county to increase an assessment based upon the discovery of a clerical or mathematical error. See also, Krohn v. Snyder County Board of Assessment Appeals, 62 A.3d 476, 479 (Pa. Cmwlth. 2013) (identifying five circumstances where the established value for a property may be changed including the "need to correct a mathematical or clerical error" (internal quotation mark omitted)); Callas v. Armstrong County Board of Assessment, 453 A.2d 25, 27 (Pa. Cmwlth. 1982) (assessments containing mathematical or clerical errors not uniform or based on actual value; taxing authority has power and duty to correct erroneous assessments).

The majority concludes that common pleas erred when it held "that the Assessment Office could change the grade of the [Blandas' p]roperty from D-minus to C-plus based upon information from the field officers on construction and type of materials, photos, and opinion," and states that "[t]he basis for the change in the construction grade does not amount to a mathematical or clerical correction to the assessment records." Blanda v. Somerset County Board of Assessment Appeals, __ A.3d __, __ (Pa. Cmwlth., No. 1934 C.D. 2014, filed January 6, 2016), slip op. at 8-9 (internal quotation marks omitted). Rather, the change was made based upon Assessment Office staff recommendations "as a result of their current view of the Property, not because of an error in the record." Id. at 9. The majority, thus, posits that "the Assessment Office failed to show a mathematical or

clerical error regarding the" construction grade and that the alteration, therefore, is not permitted.  Id.

In Callas, this Court approved mathematical and clerical corrections to the record because they were made to accurately reflect the correct information at the time of the previous county-wide assessment, there a value of $500 per front foot rather than the $300 per front foot value applied in error.  Callas, 453 A.2d at 26-27.  Here, the correct information at the time of the last county-wide assessment in 2008 was that the Blandas' property had: two and one-half stories as opposed to the one story structure reflected in the Assessment Office's records; a square footage of 4,274 square feet rather than the 2,206 square feet reflected in the records; and, better construction and materials than indicated in the records.

The evidence at the hearing before common pleas showed that the assessment for Blandas' lodge contained mathematical and clerical errors that resulted in an incorrect assessment.  I would hold that *all* of the changes in the Blandas' assessment fall squarely within the exception allowing the correction of mathematical or clerical errors.  The corrections were made to accurately reflect the actual information at the time of the prior county-wide reassessment in 2008. The corrections deal strictly with clerical and mathematical errors in the *descriptive information* about the lodge in the assessment record.  If the descriptive information includes the number of stories and the square footage, it surely must include the construction and type of materials.

The record before common pleas establishes that the changes to the Blandas' assessment were based solely on correcting errors found in the 2008 assessment records. As such, I would agree with common pleas that the updated assessment, in its entirety, falls within the <u>Callas</u> exception and, thus, would affirm.

 

_____

**RENÉE COHN JUBELIRER, Judge**