IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James B. Blanda   : <br>
and Suzanne R. Blanda,   : <br>
     Appellants   : <br>
      : <br>
   v.   : <br>
      : <br>
The Somerset County Board of   : <br>
Assessment Appeals, Somerset   : <br>
County, Township of Jefferson,   :   No. 409 C.D. 2022 <br>
and Somerset Area School District   :   Submitted: January 5, 2024

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge <br>
     HONORABLE CHRISTINE FIZZANO CANNON, Judge <br>
     HONORABLE LORI A. DUMAS, Judge

OPINION BY <br>
JUDGE FIZZANO CANNON      FILED: April 3, 2024

James M. Blanda and Suzanne R. Blanda (the Blandas) appeal *pro se* from the April 12, 2022 order of the Court of Common Pleas of Somerset County (trial court).[1] The trial court dismissed with prejudice the Blandas' appeal from the May 2019 denial by the Somerset County Board of Assessment Appeals (Board) of their appeal from the July 2018 assessment of their property for the 2019 tax year by the Somerset County Assessment Office (Assessment Office). The assessment effectively denied the Blandas' request to reduce the assessed square footage of a lodge on their property. Upon review, we reverse and remand to the trial court for further proceedings consistent with this opinion.

---

[1] The Somerset County Board of Assessment Appeals, Somerset County, Township of Jefferson, and the Somerset Area School District, Appellees herein, will be collectively referred to as the "Taxing Authorities."

## I. Factual and Procedural Background

The Blandas own 7.49 acres of land in Jefferson Township, Somerset County. *Blanda v. Somerset County Board of Assessment Appeals*, 131 A.3d 560, 561 (Pa. Cmwlth. 2016) (*Blanda I*). The property is improved with a house in which the Blandas reside and a lodge that they rent out seasonally; the lodge is the focus of this litigation. *Id*. This Court previously addressed the Blandas' issues with the assessment of their property in *Blanda I*.

A May 2013 property assessment indicated that the lodge was a 2½-story structure with 8 total rooms, 6 full bathrooms, 4,274 square feet of total living space, and a market value of $89,880. Original Record (O.R.) #11 (Ex. D to the Blandas' Pre-Hearing Statement/Brief to the Trial Court). The Blandas requested a Board hearing, after which the assessment was reduced to $85,910, based upon a previous error in the number of bathrooms in the lodge. *Blanda I*, 131 A.3d at 561. The Blandas filed a counseled appeal to the trial court, which held a hearing in September 2014. *Id*.

James Blanda's trial testimony was summarized in *Blanda I* as follows:

[T]he last improvements to the Property were done between 1995 and 2000, during a remodeling and rebuilding project. The Property was reassessed in 2008, and since then no improvements have been made to the Property. In 2013, a field worker from the Assessment Office came to the Property with a rental advertisement in hand. The rental advertisement listed the Property at 4,400 square feet. The 2008 assessment card listed the Property at 2,206 square feet. Blanda testified that the discrepancy was advertising hyperbole, explaining that "when I said 4[,]400 square feet, I included all of the cement pads where people could go outside. I included the deck spaces. I included all of the storage spaces. I included the hot tub area. I included the fire pit area. All of the places where people could congregate and enjoy the [P]roperty."

Blanda stated that the lodge does not have 4,400 square feet of living space and that no improvements have been made to the Property since the last assessment in 2008.

131 A.3d at 561-62 (internal record citation omitted).

The trial testimony of Mary Ann McKenzie (McKenzie), the Assessment Office's Chief Assessor, was summarized in *Blanda I* as follows:

> [T]he Assessment Office routinely checks real estate listings and rental listings on the internet to make sure descriptions of real estate located in the county match the assessed descriptions. McKenzie stated that her employees discovered a discrepancy in the Blandas' property assessment while searching the internet. Specifically, a rental advertisement listed the lodge's living space at 4,400 square feet, whereas the 2008 assessment description listed its living space at 2,206 square feet.
>
> After the discovery, the Assessment Office sent two field workers to measure the Blandas' lodge. The field workers determined that: the lodge was not one story, as described in the 2008 assessment, but was two-and-one-half stories; the garage had been measured incorrectly; the number of bathrooms was incorrect; and the grading of D-plus was incorrect. The field workers gave McKenzie measurements of the lodge, from which McKenzie made a sketch of the lodge, entered the drawing into the computer, and determined the square footage and assessment figures. From this process, McKenzie determined that the lodge was 4,274 square feet. McKenzie further testified that she only included the lodge's interior space and did not include the outside deck or the garage in her calculations.

131 A.3d at 561-62 & n.2. McKenzie added that in the 2013 assessment, the property grade, which is based on construction type and materials, was changed from D-plus to C-minus. *Id*. at 562 n.3 & 565.

The trial testimony of Candace Jane Rizzo (Rizzo), the Assessment Office's Chief Assessor, was summarized in *Blanda I* as follows:

3

> [S]he instructs her staff to look at newspapers, the internet, and real estate guides to check for discrepancies in assessment information. If a discrepancy is found, a field worker is sent to the property and corrections are made to the assessment. Rizzo stated that the correct assessment for the Property is $85,910. She further stated that the Assessment Office can correct an assessment if it contains a mistake.

131 A.3d at 562.

The trial court found in *Blanda I* that the Taxing Authorities established that the 2008 assessment of the lodge as 2,206 square feet was incorrect and that the proper measurement was 4,274 square feet, based on the 2013 measurements taken by the Assessment Office's field workers and McKenzie's computation of those measurements. Trial Ct. Op. (from *Blanda I* litigation) at 4 & 7-8.[2] The trial court also concluded that the 2013 reassessment was properly conducted to correct the erroneous square footage in the 2008 assessment and that the Assessment Office could refer to publicly available rental advertisements to discover previous mistakes in assessment records. *Id*. at 6-7. The trial court concluded that the Blandas' evidence, which was limited to Mr. Blanda's testimony, failed to establish that the 2013 assessment was incorrect. *Id*. at 4. The trial court stated:

> It is also clear from the evidence at trial that it was suggested to Mr. Blanda on various occasions to get an appraisal of the lodge done, and the county solicitor [(Daniel Rullo)] stated in closing that [he] "was even willing to continue the trial" to give Mr. Blanda an opportunity to bring an appraiser in to testify, but Mr. Blanda refused to get an appraisal done.

---

[2] The trial court's opinion in *Blanda I* was of record during that phase of this litigation and was appended to the Taxing Authorities' brief in this matter.

4

*Id*. at 4. The trial court therefore affirmed the Board's assessment of $85,910, based on 4,274 square feet for the lodge. *Id*. at 8. The Blandas filed a counseled appeal to this Court.

This Court concluded in *Blanda I* that the Assessment Office's adjustment of the lodge's square footage from 2,206 square feet in 2008 to 4,274 square feet in 2013 corrected a previous error and was not an improper spot assessment because the prior listing of the lodge as a one-story rather than a two-and-one-half-story structure resulted in the total square footage being "grossly miscalculated and understated." *Blanda I*, 131 A.3d at 563-64. We also concluded that the Assessment Office's reference to the Blandas' internet listing to remeasure the lodge's square footage was for the proper purpose of correcting the lodge's assessment information. *Id*. at 565-66. However, we remanded for further disposition of a separate issue involving the grading of the property based on the lodge's construction type and materials. *Id*. at 565.[3]

On April 15, 2016, after the matter returned to the trial court, the parties filed a stipulation of settlement stating that as of 2014 and going forward, the Property's assessed value "shall be modified from $85,910 to $82,530 due to the reclassification of the grade to the property of D+ from the previous C-classification." O.R. #10 (Ex. A to the Taxing Authorities' Pre-Hearing Statement/ Brief to the Trial Court). The stipulation also stated that upon the trial court's acceptance, "the matter will be marked settled and discontinued." *Id*. Notably, the stipulation made no mention of the lodge's square footage as a term or condition of

---

[3] Then Judge, now President Judge Cohn Jubelirer agreed with the majority as to the propriety of the Assessment Office's changes to the square footage of the lodge, but dissented as to the remand on the issue of construction grading, which is not at issue in this matter. *Blanda I*, 131 A.3d at 566-67 (Cohn Jubelirer, J., dissenting).

settlement. *Id*. The trial court issued an order on the same date stating that the matter was resolved as set forth in the stipulation. *Id*. The Blandas did not further appeal *Blanda I*, and the matter was closed as of the date of the trial court's order.

In the Blandas' view, however, the matter of the lodge's square footage was not resolved. On August 4, 2016, Solicitor Rullo sent a letter to the Blandas' counsel noting that the Blandas had again sought to challenge the lodge's assessed square footage. O.R. #11 (Ex. E to the Blandas' Pre-Hearing Statement/Brief to the Trial Court). Solicitor Rullo stated that the matter had been fully and fairly litigated in *Blanda I* and any further dispute by the Blandas concerning square footage would likely be collaterally estopped. *Id*. Rullo stated that the Board would consider an appeal of the property's valuation and would schedule a hearing on the matter only if the Blandas presented a formal appraisal rather than mere allegations. *Id*.

On August 30, 2016, the Blandas formally appealed the property's 2017 assessment, asserting that "new evidence in the form of professional drawings made in March 2016 establish the total living area to be 2,448 square feet (more or less). See attached drawings. The area is significantly less than the tax authority's record." O.R. #10 (Ex. B to the Taxing Authorities' Pre-Hearing Statement/Brief to the Trial Court). Those drawings were created in March 2016 by EADS Architects and indicated that the lodge was 2,276 square feet.[4] O.R. #10 (Ex. C to the Taxing Authorities' Pre-Hearing Statement/Brief to the Trial Court). Although the drawings were created in March 2016, they were not part of the post-remand April 2016

---

[4] The EADS drawings stated 2,276 square feet for the lodge while the Blandas' 2017 appeal stated 2,448 square feet. The basis for the 172-square-foot discrepancy is unclear from the record. In any event, the figures from the EADS drawings and the 2017 appeal are both significantly lower than the Assessment Office's figure of 4,274 square feet.

6

stipulation which, as presented to the trial court, did not touch upon square footage, an issue that was affirmed on appeal by this Court in *Blanda I*.

On September 14, 2016, Solicitor Rullo issued a letter to the Blandas,[5] which stated:

> My understanding is that you wanted to file another appeal to the assessment and revisit the same areas that were testified [to] before. We are only able to make corrections; consequently, unless you are able to establish an appraisal, the appeal would have already been resolved.
>
> As I understand it, you did submit a floor plan drawn by EADS that identified inside measurements. In order to fairly correct any mistakes, the Assessment Office has reviewed the EADS drawings and will be making adjustments using outside measurements and it is my understanding they are agreeing to take the lodge from a 2-1/2 story dwelling with no finished attic to a 2-story dwelling with a part finished attic to allow for the two small bedrooms with a sink and toilet. They will further agree to change the first floor of what EADS has drawn as the garage area and change from ½ story above the garage to a one story living space. That brings the ground floor area to 1,086 square feet versus the inside measurements of 972 square feet [for] a difference of 114 square feet. The total living area would therefore be 3,125 square feet. It is my understanding the difference is that you are not counting the area above the garage as living space and the Assessment Office is doing that. Based upon the assessment's determination, there is a difference of 163 square feet, most likely due to the [EADS] drawings being inside measurements. The original assessment was 4,274 square feet which was generally consistent with your advertisements.

---

[5] Evidently, the Blandas were no longer represented by counsel when Solicitor Rullo sent this letter. However, he noted that their former counsel was copied on the letter as a courtesy.

The tax effect of reducing the square footage is as follows: The assessed value will be decreased by $7,920 and the taxes will decrease as follows—

| | |
|---|---|
| County | $105.81 |
| Township | $49.26 |
| School District | $330.26 |
| Total | $485.33 |

I am being advised the Assessment Office sees no reason to revisit your property since the [EADS] drawing[s] represent[] inside measurements. They will make the internal changes and the Board will only hear any appeal you take if you dispute the square footage.

I am instructing you that a visit will then be scheduled with the Assessment Office Data Collectors and the Sheriff Deputies because of past confrontations and then, and only then, will a hearing be scheduled on a subsequent appeal in which you must submit an appraisal. At the present time, we will not be scheduling an appeal until you make a determination as to whether you wish to appeal this reduced assessment based on the square footage information.

You will receive this change of assessment notice effective for 2017. I wish to make it clear that the only way this matter will be scheduled before the [Board] is in the event you appeal this modification of the assessment which adjusts the square footage and we will require an appraisal to determine the adjustment in market value.

I trust this clarifies the position.

O.R. #10 (Ex. D to the Taxing Authorities' Pre-Hearing Statement/Brief to the Trial Court).

Subsequent to Solicitor Rullo's September 2016 letter, the record contains no indication of further activity until July 5, 2018, when Rizzo sent a letter from the Assessment Office to the Blandas, which stated:

8

> I received your phone call and spoke with my solicitor, Robert Boose regarding your recent inquiry to [sic] a refund and changing the square footage. Enclosed is a copy of a letter addressed to you September 14, 2016 [and] sent to you by then County Solicitor Daniel Rullo. Also enclosed is a copy of your assessment card which clearly shows that although your [EADS] drawings included only "inside measurements" we did in fact change the square footage to 3,125 on 9/12/16, reducing your assessed value by [$]7,920. There is no refund as the change that was made [was] when your drawings were submitted for the appeal filed for tax year 2017.
>
> In order to appeal enclosed is a new appeal form for 2019, which is due back by September 1, 2018, along with your appraisal. If no appraisal is submitted the [Board] will not be scheduling a hearing. No hearing was scheduled after Daniel Rullo wrote to you on 9-14-[16] explaining the changes that were made an[d] your options.
>
> Upon return of the enclosed appeal form AND an appraisal a hearing shall be scheduled.

O.R. #11 (Ex. H to the Blandas' Pre-Hearing Statement/Brief to the Trial Court).

On August 31, 2018, the Blandas formally appealed the 2019 assessment of the property to the Board. O.R. #10 (Ex. E to the Taxing Authorities' Pre-Hearing Statement/Brief to the Trial Court). The Blandas stated on the appeal form that they wished to correct errors on the property's assessment "dating back to the 2013 reassessment." *Id*. Mr. Blanda attached a letter asserting that the Assessment Office had no right to require him to secure an appraisal in order to have the lodge's square footage reviewed again. *Id*. He reiterated his position that the 2013 calculation of 4,274 square feet for the lodge was in error and that the Assessment Office's unilateral reduction to 3,125 square feet via Solicitor Rullo's September 2016 letter and Rizzo's July 2018 letter was also in error. *Id*.

The record contains no further documentation concerning the Blandas' August 2018 assessment appeal, and there is no record of a hearing on that appeal before the Board. The Taxing Authorities' Pre-Hearing Statement/Brief to the trial court indicates that the Board denied the Blandas' appeal by "Formal Decision dated May 2, 2019"; however, that decision is not in the trial court's original record in this matter. The Blandas appealed the Board's denial to the trial court on May 31, 2019. O.R. #1. After several continuances, the trial court held a proceeding on March 4, 2022. O.R. #15. Appearing *pro se*, Mr. Blanda stated that he brought exhibits for the trial court's consideration, but the trial court declined to accept them, stating instead that the proceeding was limited to argument on whether the square footage issue had been previously litigated. *Id*. at 2 & 8.

During the proceeding, Mr. Blanda reiterated that the Assessment Office's 2008 calculation for the lodge as 2,206 square feet was correct and that the 2013 calculation of 4,274 square feet based on the rental advertisement was incorrect because no additions to the lodge had been made during those years. O.R. #15 at 3. The error arose, Mr. Blanda explained, because the 2008 assessment had the correct square footage but had incorrectly assigned the lodge only one story rather than two and one-half; the only correction needed in 2013, therefore, was to fix the error in the lodge's recorded stories rather than to double the square footage, which had not changed. *Id*. at 3-5.

The trial court observed that the Blandas could have presented evidence to challenge the Assessment Office's 2013 figures during the prior proceedings in 2014 and had declined to do so. O.R. #15 at 6. The trial court reasoned that the Blandas' EADS drawings, which were prepared after this Court's January 2016 decision, did not constitute new or previously unavailable evidence; the lodge's

10

square footage had been litigated to a final determination by the trial court and was upheld in relevant part by this Court. *Id.* at 6 & 9-11. Counsel for the Taxing Authorities agreed with the trial court's evaluation of the matter. *Id.* at 7. At the close of the proceeding, the trial court stated that it would be dismissing the Blandas' appeal on the basis of collateral estoppel. *Id.* at 13.

Accordingly, the trial court issued an order on April 11, 2022, dismissing the Blandas' appeal with prejudice. O.R. #14. The trial court stated that the Blandas were collaterally estopped from challenging the Assessment Office's 2016 calculation for the lodge as 3,125 square feet because the issue of square footage had been before the trial court in the previous litigation; therefore, the trial court did not opine on the Assessment Office's 2016 calculation. *Id.* at 1-2. The trial court added that during the prior proceedings, the Blandas had the opportunity to introduce evidence in support of their challenge but had not done so beyond averring that the 2008 figure was correct. *Id.* at 2. The Blandas timely appealed to this Court.

## II. Discussion

Under the doctrine of collateral estoppel, relitigation of an issue of fact or law determined in a prior proceeding is precluded if (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment. *Erisco Indus., Inc. v. Workers' Comp. Appeal Bd.*

11

*(Luvine)*, 955 A.2d 1065, 1068-69 (Pa. Cmwlth. 2008).[6] Collateral estoppel "only requires that a party be given a full and fair chance to litigate the issue. The fact that more conclusive evidence might be presented at a subsequent hearing is neither sufficient nor relevant grounds for disallowing the application of the doctrine in this Commonwealth." *Id*. at 1069 (quoting *Dep't of Transp. v. Martinelli*, 563 A.2d 973, 976-77 (Pa. Cmwlth. 1989)).

In *Hershey's Mill Homeowner's Association v. Chester County*, 862 A.2d 146 (Pa. Cmwlth. 2004) (*Hershey's II*), the association had previously argued that its golf course was a "common facility" for the association's homeowners and did not have independent economic value; therefore, it should not have been assessed separately from the homes in the association. *Id*. at 147-48. A trial court denied the association's appeal, and this Court affirmed in a November 2000 memorandum opinion. *Id*. at 148; *Hershey's Mill Homeowner's Ass'n v. Chester County* (Pa. Cmwlth., No. 2535 C.D. 1999, filed Nov. 9, 2000) (unreported) (*Hershey's I*). Several years later, the association again appealed the golf course assessment, arguing that the law had changed due to a decision of this Court that had been issued after *Hershey's I*. *Hershey's II*, 862 A.2d at 149. That trial court concluded that the case at issue was not a change in the law and deemed the Association's challenge collaterally estopped due to the prior litigation in *Hershey's I*. *Hershey's II*, 862 A.2d at 149.

The matter returned to this Court, which in *Hershey's II* considered *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591 (1948), where the United States Supreme Court recognized that "each tax year was the 'origin of a new

---

[6] Our review in a tax assessment appeal is limited to determining whether the trial court abused its discretion or committed an error of law or whether its decision is supported by substantial evidence. *Blanda I*, 131 A.3d at 562 n.4.

12

liability and of a separate cause of action'" because income taxes were levied annually. *Hershey's II*, 862 A.2d at 150 (quoting *Sunnen*). Generally, "if the subsequent proceeding involved a similar or different claim regarding a different tax year, the prior judgment would only act to collaterally estop those matters in the second proceeding that were actually presented in the first suit." *Id.* As such,

> where a question of fact essential to the judgment is actually litigated and determined in the first tax proceeding, the parties are bound by that determination in a subsequent proceeding even though the cause of action is different. And if the very same facts and no others are involved in the second case, a case relating to a different tax year, the prior judgment will be conclusive as to the same legal issues which appear, assuming no intervening doctrinal change.

*Id.* (citations omitted). However, "subsequent modification of the significant facts or a change or development in the controlling legal principles may make [a previous determination] obsolete or erroneous, at least for future purposes." *Id.*

This Court concluded in *Hershey's II* that *Sunnen* applied to real estate tax appeals as well as income tax issues and proceeded to consider the association's assertion that the law had changed since its prior appeal in *Hershey's I*, noting: "If no change in the law has occurred, then *Sunnen* holds that a party will be collaterally estopped from relitigating the same issues regarding subsequent and different tax years, even though different tax years are normally considered a new cause of action." 862 A.2d at 151. After concluding that the case cited by the association was distinguishable and did not amount to a change in the law to the association's benefit, this Court upheld a trial court's collateral estoppel determination:

> [B]ecause there has been no change in the law, all that is before us is the identical issue that was raised before the courts in 1999. On November 9, 2000, the matter was conclusively decided with a final decision being issued by

13

this Court in *Hershey's I*. There is no question that the parties in this proceeding were the same litigants in *Hershey's I*, and the [a]ssociation had a full and fair opportunity to litigate the issue regarding the golf course in *Hershey's I*. Consequently, the [a]ssociation is collaterally estopped from relitigating the issue of whether the golf course is a common facility and exempt from taxation for tax years 2000 through 2003 based on the reasoning set forth in *Sunnen*.

*Id*. at 151-52.

Here, as stated above, the trial court dismissed the Blandas' appeal on the basis of collateral estoppel after concluding that the litigation that terminated with this Court's January 2016 opinion in *Blanda I* had resolved the issue of the lodge's square footage at 4,274 feet. O.R. #14. Nevertheless, the Blandas maintain that the 2,206 square footage calculation from 2008 was correct and the only error at that time was the assessment indication that the lodge had one story instead of two and one-half. According to the Blandas, the Assessment Office erred in 2013 when it not only corrected the number of floors the lodge has in its records but also doubled the square footage to over 4,000 feet. Blandas' Br. at 9-12. This alleged error then persisted through this Court's January 2016 decision and remains uncorrected. *Id*. at 14-15.

The Blandas aver that in this matter, the trial court's conclusion that the issue of the lodge's square footage is collaterally estopped wrongly enshrines the prior error and deprives them of a full and fair hearing where their new evidence (the 2016 EADS drawings) can be properly considered. Blandas' Br. at 18. The Blandas posit that Solicitor Rullo's September 2016 letter advising that the Assessment Office had reviewed the drawings and was willing to reduce the assessed square footage of the lodge to 3,125 square feet and Rizzo's July 2018 letter commemorating that change in the assessment records constituted a new

determination on square footage that the Blandas did not have the opportunity to refute. *Id.* at 21. Therefore, according to the Blandas, collateral estoppel is not applicable here. *Id.*

The Taxing Authorities respond that the trial court correctly concluded that collateral estoppel precludes the Blandas from relitigating the square footage of the lodge because they had a full and fair opportunity to present evidence during the prior litigation and declined to do so. Taxing Authorities' Br. at 19. The Taxing Authorities point out that if no change in the facts or law has occurred, then "a party will be collaterally estopped from relitigating the same issues regarding subsequent and different tax years, even though different tax years are normally considered a new cause of action." *Id.* at 19-20 (quoting *Hershey's II*, 862 A.2d at 151).

The Taxing Authorities rely on the litigation that ended with this Court's January 2016 decision in *Blanda I*, which affirmed the trial court's conclusion that the Blandas' lodge was 4,274 square feet.[7] Taxing Authorities' Br. at 20. According to the Taxing Authorities, those resolutions finalized the lodge's square footage, and the Blandas cannot relitigate that issue, particularly when they could have presented evidence during *Blanda I* in support of their calculations (*e.g.*, the EADS drawings) and failed to do so. *Id.*

Regarding the Assessment Office's reduction of the assessed square footage of the lodge from 4,274 square feet to 3,125 square feet in Solicitor Rullo's September 2016 letter, the Taxing Authorities assert that the Blandas could have pursued their then-pending appeal of the 2017 assessment. Taxing Authorities' Br.

---

[7] Although the subsequent stipulation filed with and approved by the trial court in April 2016 formally concluded the *Blanda I* litigation, it is not at issue here because it expressly pertained only to the lodge's construction grading and did not address the issue of the lodge's square footage.

at 23-24. Instead, the Taxing Authorities note, the Blandas did nothing until two years later when they filed the August 31, 2018 appeal of the 2019 assessment, which underlies this matter; the Taxing Authorities argue that the Blandas therefore waived their present claims. *Id*. at 24.

Applying the well-settled test for collateral estoppel as set forth in *Erisco Industries*, four of the five required elements are clearly met here. There was a final determination on the merits in *Blanda I*, specifically that the Assessment Office acted properly and that its revised measurement of 4,274 square feet for the lodge would stand. *Id*. at 565-66. The Blandas and the Taxing Authorities were the parties in *Blanda I* and are again the parties in this matter. The Blandas also had a full and fair opportunity to litigate the square footage of the lodge in *Blanda I*. There, the trial court concluded that the Blandas' evidence, which was limited to Mr. Blanda's testimony, failed to establish that the Assessment Office's 2013 measurement of 4,274 square feet was incorrect. Trial Ct. Op. (from *Blanda I* litigation) at 4 & 7-8. Specifically, the trial court concluded that at trial, the Blandas "refused to provide their own measurements of the property" in order to refute the Assessment Office's calculation. *Id*. at 4. The trial court noted that during the course of proceedings, "it was suggested to Mr. Blanda on various occasions to get an appraisal of the lodge done," and that Solicitor Rullo "stated in closing that [he] 'was even willing to continue the trial' to give Mr. Blanda an opportunity to bring an appraiser in to testify, but Mr. Blanda refused to get an appraisal done." *Id*. Lastly, the determination by the trial court that the lodge was 4,274 square feet was essential to the ultimate judgment in *Blanda I*: the trial court concluded in that matter that the Blandas failed to establish that the Taxing Authorities' 2013 amendment increasing

16

the square footage for the lodge and the resulting assessment were incorrect or improper. 131 A.3d at 565-66.

However, one element of the test for collateral estoppel cannot be easily disposed of: whether the issue in *Blanda I* was identical to the issue the Blandas now seek to litigate. In August 2016, months after this Court's decision in *Blanda I*, the Blandas formally appealed the Assessment Office's 2017 assessment of the lodge's square footage at 4,274 square feet, asserting that the EADS drawings constituted "new evidence" establishing that the lodge's total living area was only 2,448 square feet, significantly lower than the 4,274 square feet established in *Blanda I*. O.R. #10 (Ex. B to the Taxing Authorities' Pre-Hearing Statement/Brief to the Trial Court).

Had the Assessment Office maintained the 4,274 square footage figure from *Blanda I*, the Blandas would be collaterally estopped from further challenges to the lodge's square footage because the issue would be the same as the issue presented in *Blanda I*. However, Solicitor Rullo's September 14, 2016 letter to the Blandas stated that the Assessment Office had *reviewed the EADS drawings* and was willing to reduce the assessed square footage of the lodge from 4,274 square feet to 3,125 square feet. O.R. #10 (Ex. D to the Taxing Authorities' Pre-Hearing Statement/Brief to the Trial Court). Rizzo's July 5, 2018 letter to the Blandas expressly commemorated that change in the assessment records. O.R. #11 (Ex. H to the Blandas' Pre-Hearing Statement/Brief to the Trial Court).

The Assessment Office thus unilaterally made a new determination of the lodge's square footage and changed the resulting valuation of the property based on its review of the EADS drawings. The Blandas were then deprived of a full and fair opportunity to litigate the meaning of the drawings or to challenge the Assessment Office's new square footage determination and resulting new valuation

17

of the property.[8]    The Assessment Office's actions therefore created new circumstances and a new "issue" that was not previously litigated before the Board or the courts in *Blanda I*.

This distinguishes this case from *Hershey's II*, where the local assessment authority did not change the status of the golf course or any other circumstances so as to render collateral estoppel inapplicable. There, unlike here, the property owner presented "the very same facts and no others" when the matter was litigated a second time. 862 A.2d at 150. By contrast, the Blandas have presented different facts here, specifically the Assessment Office's new determination that the lodge is 3,125 square feet, not 4,274 square feet. Accordingly, the Blandas are entitled to a full and fair Board evaluation of their current challenge, during which they may present evidence, including the EADS drawings that were reviewed and considered by the Assessment Office in reducing the assessed square footage of the lodge from 4,274 square feet to 3,125 square feet.[9]

Lastly, although the Blandas ultimately did not pursue their challenge to the assessment for the 2017 tax year and presumably paid the taxes on the "new" lodge figure of 3,125 square feet in 2017 and 2018, they did not waive their appeal rights. As noted, under *Hershey's II*, each tax year is the "origin of a new liability

---

[8] Somerset County is subject to the Consolidated County Assessment Law, 53 Pa.C.S. §§ 8801-8868. Pursuant to Section 8844(c), any person aggrieved by an assessment may appeal to the county's assessment board on or before September 1. 53 Pa.C.S. § 8844(c); *In re Rausch Creek Land, L.P.*, 59 A.3d 1, 6 (Pa. Cmwlth. 2012).

[9] We note that neither Section 8844 of the Consolidated County Assessment Law nor its case law authorized the Taxing Authorities' statements in various letters to the Blandas that their right to an appeal hearing before the Board was conditioned on obtaining an appraisal. *See In re Springfield Sch. Dist.*, 101 A.3d 835, 848 (Pa. Cmwlth. 2014) (stating that the Consolidated County Assessment Law "does not require a certified appraiser's review before filing an assessment appeal").

18

and of a separate cause of action." 862 A.2d at 150 (quoting *Sunnen*). Also, payment of taxes is a prerequisite to the ability to appeal an assessment and seek a refund as long as that is done within three years of payment. *Lutes v. Fayette Cnty. Bd. of Assessment Appeals*, 936 A.2d 573, 580 (Pa. Cmwlth. 2007) (citing Section 1 of what is commonly known as the Refund Act, Act of May 21, 1943, P.L. 349, *as amended*, 72 P.S. § 5566b). As such, the Assessment Office's creation of new circumstances when it reduced the square footage of the lodge from 4,274 to 3,125 in September 2016 (for the 2017 tax year) meant that the Blandas retained the right to pursue their challenge to those new facts for the 2019 tax year, which they did in a timely manner before September 1, 2018. O.R. #10 (Ex. E to the Taxing Authorities' Pre-Hearing Statement/Brief to the Trial Court).

In light of the foregoing, the trial court erred in concluding that collateral estoppel precluded the Blandas' 2018 appeal after the Assessment Office unilaterally reduced the lodge's assessed square footage in September 2016 from the judicially determined figure of 4,274 square feet to 3,125 square feet. This matter is remanded to the trial court to address the merits of the Blandas' appeal. In the event the trial court concludes that the current record requires supplementation or that further Board proceedings are necessary, the trial court may remand to the Board for further action as the trial court may direct, consistent with this opinion.

### III. Conclusion

The trial court's order dismissing the Blandas' real estate tax assessment appeal on the basis of collateral estoppel is reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James B. Blanda       :
and Suzanne R. Blanda,     :
       Appellants  :
             :
    v.          :
             :
The Somerset County Board of   :
Assessment Appeals, Somerset   :
County, Township of Jefferson,   :  No. 409 C.D. 2022
and Somerset Area School District  :

## **O R D E R**

     AND NOW, this 3rd day of April, 2024, the April 12, 2022 order of the Court of Common Pleas of Somerset County is REVERSED. This matter is REMANDED to the trial court for further proceedings consistent with this opinion.

     Jurisdiction relinquished.

              _____
              CHRISTINE FIZZANO CANNON, Judge